**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James LENDMANN,
Defendant-Appellant.**

**No. 84–1141.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 29, 1985.
Decided March 20, 1985.

Thomas J. Scorza, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Joshua Sachs, Chicago, Ill., for defendant-appellant.

Before CUDAHY, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

James Lendmann was convicted in the United States District Court for the Northern District of Illinois of manufacturing, and attempting to manufacture, methamphetamine. Lendmann now appeals. We affirm.

On September 22, 1982, agents of the Drug Enforcement Administration (DEA) and local police executed a search warrant at a commercial building in Villa Park, Illinois. The warrant authorized a search for a methamphetamine laboratory operation. A small chemical laboratory was found from which were seized various pieces of laboratory equipment, chemicals and a box containing textbooks, articles and notes on methods of making methamphetamine and related drugs. As a result, James Lendmann was charged in a three-count federal indictment. Counts I and II, respectively, charged that Lendmann manufactured, and possessed with intent to distribute, 3.59 grams of a methamphetamine mixture, a Schedule II controlled substance. 21 U.S.C. § 841(a)(1). Count III charged a violation of 21 U.S.C. §§ 841(a)(1) and 846, attempting to manufacture an additional quantity of methamphetamine. At trial, a DEA chemist testified that among the chemical samples seized was 3.59 grams of methamphetamine. The chemist further testified that there were enough chemicals to manufacture approximately one kilogram of methamphetamine. Testifying in his own defense, Lendmann admitted control of the laboratory and ownership of the equipment, chemicals and papers seized. He also admitted to the manufacture and possession of methamphetamine and testified that he knew methamphetamine was an illegal drug. However, Lendmann claimed that he had not compounded the methamphetamine for drug use or distribution but rather as an intermediate step in the extraction of platinum from the used catalytic converters of automobiles. In the process, Lendmann asserted, the methamphetamine would ultimately be completely destroyed. In rebuttal, a DEA agent testified that at the time of execution of the search warrant he had a conversation with Lendmann in which Lendmann told him that he planned to sell the methamphetamine he made to another person. The jury returned verdicts of guilty on Counts I and III and not guilty on Count II, and Lendmann was subsequently sentenced to concurrent terms of five years imprisonment on Counts I and III and to a two-year special parole to follow his sentence on Count I. However, execution of sentence was suspended, and Lendmann was placed on five years probation conditioned upon a six month term at the Metropolitan Correctional Center on a work release program. Lendmann was also fined $5,000. On appeal Lendmann raises one issue. He argues that his conduct was not within the scope of conduct Congress sought to criminalize when it enacted §§ 841(a)(1) and 846. We disagree.

As a necessary premise to his argument, Lendmann initially claims that his acquittal on Count II can only mean that the jury credited "Lendmann's own explanation ... that he made methamphetamine only as an intermediate step in a process which contemplated destruction of all the methamphetamine by the time the process would be completed." Otherwise, Lendmann argues, the guilty verdicts on Counts I and III are inconsistent with his acquittal on Count II. First of all, we note that it is not the court's function "to reassess a jury's credibility determinations." *United States v. McComb,* 744 F.2d 555, 566 (7th Cir.1984). Even so, we find Lendmann's argument illusory. In many circumstances "intent to distribute" is established by circumstantial evidence, including evidence as to the quantity of drugs seized. *See United States v. Hill,* 589 F.2d 1344, 1350 (8th

Cir.1979); *United States v. Marchildon,* 519 F.2d 337, 345 (8th Cir.1975). However, just as it is permissible to draw an inference of intent to distribute from the possession of a large quantity of a controlled substance, *United States v. Brischetto,* 538 F.2d 208, 210 (8th Cir.1976), a jury is equally free not to make such an inference. *Id.* An inference of a lack of intent to distribute is even more compelling, with nothing more, from a small quantity. As Lendmann argued at trial, the amount of methamphetamine seized by DEA agents was very small, weighing, he said, only about as much as a U.S. penny. The jury may well have concluded that the amount charged in Count II (3.59 grams) was too small to be intended for distribution, and, consistent with its guilty verdicts on Counts I and III, still have chosen not to credit Lendmann's theory of defense.[1]

■ Were we to assume, however, the veracity of Lendmann's testimony, the issue for review, as Lendmann argues, resolves itself into the question whether a person who concededly manufactures or attempts to manufacture, a controlled substance without the intent to distribute but solely to use as an intermediate step in a chemical process which contemplates destruction of all the illicit substance upon completion of the process falls within the criminal prohibitions of 21 U.S.C. §§ 841 and 846. Lendmann candidly admits that his conduct is violative of the broad language of §§ 841 and 846. Contrary to Lendmann's argument, however, Congress intended to make such conduct punishable as a crime.

In pertinent part, 21 U.S.C. § 841 reads:

(1) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....[2]

Section 822(b) of Title 21, United States Code, specifies those activities authorized by the subchapter and by implication fleshes out the "[e]xcept as authorized by this subchapter" phrase of § 841:

Persons registered by the Attorney General under this subchapter to manufacture, distribute, or dispense controlled substances are authorized to possess, manufacture, distribute, or dispense such substances (including any such activity in the conduct of research) to the extent authorized by their registration....

Under a plain reading of these statutes, any person who is not registered by the Attorney General for a given substance is not authorized to manufacture it, and thus is not exempt from prosecution under § 841 (or § 846). *See United States v. Blanton,* 730 F.2d 1425, 1429 (11th Cir. 1984) (conviction under § 841(a)(1) of physician not registered to dispense methaqualone, a controlled substance, upheld).[3]

Lendmann attempts to avoid this conclusion by arguing that §§ 841 and 846 were designed to punish drug trafficking rather than providing a technical basis upon which convictions of persons not involved in such trafficking may be obtained. In support of his argument, Lendmann relies on the testimony of Dr. Sarah Miles Woods, a professor of chemistry at Roosevelt University. According to Dr. Woods, inevitably, a scien-

---

1. Even assuming *arguendo* that the guilty verdicts were to some extent inconsistent with his acquittal, this court has held that jury verdicts "'reflecting compromise or even inconsistency [are] permissible and legitimate,'" so long as the evidence to support the counts on which the defendant was actually convicted is sufficient. *United States v. McComb,* 744 F.2d at 566, *quoting United States v. Fields,* 689 F.2d 122, 126 (7th Cir.), *cert. denied,* 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 935 (1982). *See* discussion *infra.*

2. 21 U.S.C. § 846 provides, in relevant part, that "[a]ny person who attempts ... to commit any offense defined in this subchapter" shall be guilty of a crime. The phrase "offense defined in this subchapter" includes the offense of manufacturing a controlled substance in violation of 21 U.S.C. § 841(a)(1).

3. Although not explicitly stated in the record, we assume Lendmann was not registered to manufacture methamphetamine. In any event, Lendmann does not argue on appeal that he was registered to manufacture methamphetamine.

tist engaged in legitimate experimentation can never be certain that a process designed to synthesize a compound might not as an intermediate step yield a controlled substance. Citing no authority to support his position, Lendmann argues it was not the intent of Congress to make conduct involving legitimate research punishable as manufacturing offenses under 21 U.S.C. §§ 841(a)(1) and 846. Lendmann errs, however, in his interpretation of Congress' intent in the passage of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* In enacting the Controlled Substances Act, "Congress was particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels." *United States v. Moore,* 423 U.S. 122, 135, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975). The Act, therefore, was an attempt to limit this diversion by strict registration requirements for all persons who are authorized to legitimately work with controlled substances in order to closely monitor the flow of controlled substances from manufacturer to consumer. *United States v. Blanton,* 730 F.2d at 1427–1428. Indeed, Congress was not so naive as to fail to recognize that registrants, who invariably have the greatest access to controlled substances and therefore the greatest opportunity for diversion, were responsible for a large part of the illegal drug traffic. *United States v. Moore,* 423 U.S. at 135, 96 S.Ct. at 342. Registration, then, was meant to circumscribe the authority to manufacture controlled substances and was acknowledged as perhaps the only means of ascertaining all those individuals who work with such substances. 116 Cong.Rec. 1664 (1970) (remarks of Sen. Hruska). It seems eminently clear that Congress meant to prohibit all activities, legitimate or otherwise, of unregistered manufacturers of controlled substances and intended that their conduct be punishable under §§ 841(a)(1) and 846. *See United States v. Fooladi,* 746 F.2d 1027,

1032 (5th Cir.1984) (convictions of unregistered chemist for manufacturing and attempting to manufacture controlled substances under §§ 841(a)(1) and 846 in a home laboratory upheld). Lendmann, not registered to manufacture methamphetamine, falls within the conduct prohibited by 21 U.S.C. §§ 841(a)(1) and 846.[4]

■ Viewing, then, the evidence and all reasonable inferences therefrom in a light most favorable to the government, *United States v. Wiehoff,* 748 F.2d 1158, 1161 (7th Cir.1984), we conclude that the record contains sufficient evidence from which a reasonable trier of fact could find Lendmann guilty beyond a reasonable doubt. Lendmann admitted compounding the 3.59 grams of methamphetamine found in his laboratory knowing that it was an illegal drug and that he had accumulated the necessary equipment and materials to manufacture another kilogram of the substance. Various articles and notes on the manufacturing of methamphetamine were discovered at Lendmann's laboratory while no written materials were found on the chemical processes involved in the recovery of platinum. An inspection of the papers seized from the laboratory further uncovered an article entitled "Clandestine Drug Laboratories." Lendmann admitted ownership of all the equipment, chemicals and papers seized. The search, however, uncovered no catalytic converters or platinum residue. Lendmann introduced no records or notes of his experimentation in platinum extraction, but instead relied solely on his own testimony and that of Dr. Woods that a platinum extracting process using methamphetamine was chemically feasible. And despite the testimony of Douglas Schwabe, who rented space in the same building as Lendmann, that he had seen four catalytic converters at Lendmann's laboratory, Lendmann did not produce or introduce at his trial any converters. The jury was certainly free to reject Lendmann's defense

---

**4.** Moreover, the Supreme Court in *United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), interpreted 21 U.S.C. § 841 and held that even individuals who are registered are not beyond the reach of § 841 simply because of their status (e.g., a physician). *Id.* at 131–132, 96 S.Ct. at 340 (a registered physician violates § 841 when he exceeds the usual course of professional practice). *See also United States v. Betancourt,* 734 F.2d 750, 757 (11th Cir.1984).

and infer that Lendmann was not involved in legitimate research or experimentation.

Accordingly, the judgments of conviction are

AFFIRMED.