**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank Thomas HOLLINS,**
**Defendant-Appellant.**

**No. 85–2987.**

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1986.
Decided Feb. 10, 1987.

Terry C. Gray, Gary, Ind., for defendant-appellant.

James G. Richmond, U.S. Atty., Patrick D. Hansen, John F. Hoehner, Asst. U.S. Attys., Northern District of Ind., Hammond, Ind., for plaintiff-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and MAROVITZ, Senior District Judge.*

MAROVITZ, Senior District Judge.

The defendant-appellant, Frank Hollins, was convicted after a jury trial on all counts of a five count indictment. Count I charged Hollins with conspiring, in violation of the federal conspiracy statute, 18 U.S.C. § 371, to pass, utter or publish forged or altered money orders with the intent to defraud in violation of 18 U.S.C. § 500. Count II charged Hollins with causing, aiding and abetting, in violation of 18 U.S.C. § 2, the violation of section 500 charged in Count I. Counts III, IV and V all charged Hollins with intentionally forging and counterfeiting material signatures to United States Postal money orders in violation of section 500. Hollins was sentenced to a period of twenty years of incarceration—five years on Count I; five years on Count II, to run concurrently with Count I; five years on Count III, to run consecutively with the sentence imposed on Counts I and II; five years on Count IV, to run consecutively with the sentence imposed on Counts I through III; and five years on Count V, to run consecutively with the sentence imposed on Counts I through IV. Hollins appeals his convictions and we affirm.

Hollins' first two contentions are that he was denied evidentiary hearings on his motions to suppress and dismiss. Our review of the record on the motions to suppress and dismiss reveals that Hollins never formally requested an evidentiary hearing on either motion. The district court, therefore, had no opportunity to directly rule on whether Hollins was entitled to such a hearing. "It is a well-established general proposition that a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide." *Holleman v. Duckworth,* 700 F.2d 391, 394–95 (7th Cir. 1983). Although memoranda were filed and oral argument heard, because this issue was not presented to and addressed by the district court there is no necessity for our ruling on it in this court.

The district court did address, and the appellant did raise on appeal, the merits of the motion to suppress. This court has reviewed the district court's ruling on that motion. Hollins was arrested on April 16,

---

* The Honorable Abraham Lincoln Marovitz, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1980 on a charge of obstructing a criminal investigation. The arrest was made without a warrant. At a post-arrest hearing a magistrate found that the officers had had probable cause to arrest and issued a post-arrest warrant.

Hollins argues that the arrest was merely a pretext for the procurement of his photograph and handwriting exemplars which were used in the investigation and trial of the present charges. Hollins' handwriting exemplars were taken pursuant to a grand jury subpoena issued while Hollins was in custody on the obstruction charge. Hollins' photograph was also taken while he was in custody on that charge.

The district court held that the grand jury subpoena which ordered Hollins to give the handwriting exemplars was independent of the facts and circumstances surrounding his arrest on April 16, 1980. (R. 28). Because Hollins had no basis for objecting to the grand jury subpoena, the district court denied the motion to suppress the handwriting exemplars.

■ We agree that Hollins could have no valid objection to complying with the grand jury subpoena. A handwriting exemplar is neither a search nor seizure under the fourth amendment. *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). Nor is a handwriting exemplar testimonial evidence subject to the fifth amendment privilege against self incrimination. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). *In fact, on page 3 of his affidavit which is attached to the motion to suppress Hollins states that he voluntarily complied with the grand jury subpoena.* Accordingly, we find that the district court properly denied Hollins' motion to suppress the handwriting exemplars.

■ The district court also denied Hollins' motion to suppress the photograph taken of him while in custody on the obstruction charge. The district court reasoned that, as with the handwriting exemplars, which were obtained by use of a grand jury subpoena, the photograph could have been obtained through means other than the arrest. (R. 35). We agree. As with the handwriting exemplars, the photograph could have been obtained by use of a grand jury subpoena without violating Hollins' fifth amendment right against self incrimination. *Schmerber v. California,* 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966). Therefore, we find that the district court properly denied Hollins' motion to suppress the photograph.

■ The district court also denied on the merits Hollins' motion to dismiss. Hollins argues that the almost four year delay between the end of the conspiracy and his indictment violated his fifth amendment right to due process of law. He claims actual and substantial prejudice to his defense due to the fact that Delphine Porter, a government witness, was a better witness against him than she would have been had he been brought to trial sooner.

In 1980 Porter was a drug addict with a $200.00 a day heroin habit. During a 21 month period of incarceration at Lexington Prison Porter kicked her drug habit. The government responds that this factor does not constitute actual and substantial prejudice to Hollins' case.

Pre-indictment delay may constitute a due process violation if it substantially prejudices the defendant even if the indictment was returned within the limitations period.[1] *See United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). The defendant bears the burden of showing "actual and substantial prejudice to his defense." *United States v. Williams,* 738 F.2d 172, 175 (7th Cir.1984). Within this circuit there is conflicting authority as to whether, after a showing of actual and substantial prejudice has been made by the defendant, the defendant then bears the additional burden of proving that the government delayed the

---

1. The charges in this case were brought within the five year statute of limitations. *See* 18 U.S.C. § 3282.

indictment for a tactical advantage or some other impermissible purpose, *United States v. Watkins,* 709 F.2d 475, 479 (7th Cir. 1983), or if the burden is then shifted to the government to show why the pre-indictment delay was necessary. *United States v. Solomon,* 688 F.2d 1171, 1179 (7th Cir. 1982).

We need not resolve this conflict at this time because we hold that Hollins has not met the threshold requirement under both lines of cases of showing actual and substantial prejudice to his defense. *See United States v. Brock,* 782 F.2d 1442, 1443 n. 1 (7th Cir.1986) (noting but not resolving this conflict). The fact that Delphine Porter may have been a better witness at the trial than if Hollins had been indicted in 1980 is insufficient to establish actual and substantial prejudice. *Cf. Brock,* 782 F.2d at 1444 (an unsupported assertion that the defendant's "memory of events that occurred between 1975 and 1979 might have faded" does not establish actual and substantial prejudice); *Solomon,* 688 F.2d at 1179–80 (no prejudice despite death of two defense witnesses). Because of the myriad of prosecutorial decisions involved, the choice of whether and when to prosecute is ill suited to judicial review unless prejudice is clearly established. *See Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *Brock,* 782 F.2d at 1444.

■ Hollins' third contention is that there is insufficient evidence in the record from which a rational jury could have found him guilty beyond a reasonable doubt. When reviewing a claim of insufficient evidence this court must view the evidence in the light most favorable to the prosecution, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984), and then ask whether *"any* rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560

(1979) (original emphasis). The burden on the appellant to show that there is insufficient evidence in the record is therefore a heavy one. *United States v. Silva,* 781 F.2d 106 (7th Cir.1986). We find that Hollins has not met his burden and that there is sufficient evidence in the record from which a rational trier of fact could have found Hollins guilty beyond a reasonable doubt.

The parties stipulated the following facts. On or about August 16, 1979 eighteen Postal Money Orders in the amount of $1.00 were purchased from a window clerk at the Rimpau Station Postal facility in Los Angeles, California. Subsequently, on or about November 2, 1979 twenty five Postal Money Orders in the amount of $1.00 were purchased from a window clerk at the West Adams Station Postal facility in Los Angeles. The parties further stipulated that the dollar amounts of each of the above-mentioned money orders was altered to $300.00.

The evidence in the record, when viewed in the appropriate light, shows the following facts. Delphine Porter testified that on March 11, 1980 she was approached by Clay Edward Ross and asked if she would like to make some money. Porter was then driven in a car by a man referred to as "Moe" and whom she identified as Hollins to her house. The car Hollins was driving was a gold-colored Thunderbird. When they reached her house Porter went inside in order to get some identification. After Porter had returned to the car Hollins instructed Ross to give Porter a money order. Ross took an envelope from under the passenger seat and took out a money order. Porter saw about fifty money orders in the envelope. The money order was then made out to Delphine Porter and signed "Richard Harris" by Roderick Ham who was also in the car. The money order given to Porter is Government Exhibit 3 which was purchased on or about November 2, 1979 at the West Adams Station Postal facility in Los Angeles. Porter was then driven to a post office facility where she unsuccessfully attempted to cash the money order. As

Porter was being driven away from the post office, she overheard a conversation between Ross and Hollins. After stating that the money orders were not supposed to be hot yet, Hollins said that "they were going to have to get back on the road with them back to the west coast."

Gwendolyn Davis testified that on March 11, 1980 she was approached on the street by Ross. Ross asked her if she would like to make some quick cash. Davis then got into a car with Ross and two other black men. The car was gold and white. Ross then took a money order out of an envelope. According to Davis, the envelope was "full of blank money orders." Ross handed the money order to one of the men in the front seat who filled it out and signed it "Jack Smith." The money order was then given to Davis. The money order given to Davis is Government Exhibit 5 which was purchased on or about November 2, 1979 at the West Adams Station Postal facility in Los Angeles. Davis was then taken to a postal facility where she was arrested while attempting to cash the money order.

Angie Delong, Assistant Vice President of the Bank of Highland, testified that on March 14, 1980 a money order in the amount of $300.00 was cashed at the bank. The signatures on the money order were in the names of Melvin Whiting and Jack Lowe. This money order is Government Exhibit 7 and it was purchased on or about November 2, 1979 at the West Adams Station Postal facility in Los Angeles.

Frank Harris, Jr., testified that on March 17, 1980 a money order in the amount of $300.00 was cashed at his liquor store, Harris Liquor Store. The money order is Government Exhibit 8 which was purchased on or about August 16, 1979 at the Rimpau Station Postal facility. The signatures on the money order were in the names of Melvin Whiting and Jack Lowe.

Roy Mantle is an examiner of questioned documents for the United States Postal Inspection Service Crime Laboratory in Chicago, Illinois. Mantle testified that he had compared Hollins' handwriting exemplars with the handwriting on Government Exhibits 5, 7 and 8. In Mantle's opinion, it was "highly probable" that Hollins has written all of the questioned handwriting on these exhibits. Mantle testified that he could not be absolutely positive because Hollins had, in his opinion, intentionally disguised his handwriting.

We find that the evidence presented at trial is more than sufficient to sustain the convictions. The jury, whose role was trier of fact, observed the witnesses, appraised their credibility, determined the weight to be given to their testimony, drew permissible inferences therefrom, resolved conflicts in the evidence and reached the ultimate conclusions of fact. These are functions reserved exclusively to the trier of fact. We will not reweigh the evidence or test the credibility of the witnesses. *See United States v. Lendmann,* 757 F.2d 916, 917 (7th Cir.1985).

Hollins' fourth contention is that the district court improperly admitted hearsay statements of alleged co-conspirators. Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, "[a] statement is not hearsay if—[t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." In *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978), the court held that the hearsay statements of co-conspirators made during the course of and in furtherance of the conspiracy is admissible if the government establishes by the preponderance of the evidence the existence of the conspiracy through the use of independent non-hearsay evidence. *Santiago,* 582 F.2d at 1131–36.

At the close of the government's case Hollins requested a mistrial on *Santiago* grounds. The district court denied Hollins' motion finding that, by the preponderance of the evidence, "there was a conspiracy; that the declarants who have testified were members of the conspiracy; that the defendant was a member of the conspiracy, and that the statements were made in furtherance of the conspiracy...." (Tr. 282).

The responsibility for determining the admissibility of a co-conspirator's adverse declaration rests with the trial judge. *Id.* at 1130–31.

Independent evidence of Hollins' participation in a conspiracy was shown in the testimony of Mantle and Porter. Mantle testified that it was highly probable that Hollins wrote the questioned handwriting on, *inter alia,* Government Exhibits 5, 7 and 8. Porter testified that a man, whom she later identified as Hollins, drove Porter to her house so that she could get some identification, told Ross to give Porter a money order, and then Hollins drove Porter to a postal facility so that she could cash the money order. We find that this independent non-hearsay evidence is sufficient to meet the relevant standard of a "preponderance of the evidence." Accordingly, Hollins' alleged evidentiary error is without merit.

■ Hollins' final contention is that he received an unfair trial as a result of prosecutorial misconduct. Hollins objects to a question asked of a defense witness, Clay Ross and two statements made during the government's closing argument.

On cross-examination, Ross was asked the following question and he gave the following answer:

"Q. Did you advise the inspectors that both you and Mr. Hollins were Muslims belonging to the Moorish Temple of Science associated with the El Rukns sect in Chicago, Illinois?

A. No, Sir."

(R. 326–27). Hollins argues that there was no evidentiary basis for this question.

Postal Inspector Mike Szluka testified after Ross. Szluka testified that on August 6, 1985 he met with Ross and Ross told him that he was a Muslim and that he belonged to the Moorish Temple of Science. (R. 383, 384). According to Szluka, Ross also stated that although he knew Hollins (R. 384–85), he would deny knowing him if asked at trial. (R. 385).

We find that this question does not constitute prosecutorial misconduct. On the contrary, the government is allowed to impeach a defense witness' credibility. *See* Fed.R.Evid. 607.

■ Hollins also argues that the government made two improper statements to the jury during closing argument. The first contested statement is "[t]hat is the man who had 50 blank altered United States Postal Money Orders in an envelope." (R. 416). Hollins argues substantial prejudice because there were only forty-three money orders in the indictment.

We do not find this statement to create substantial prejudice to the defendant. The evidence showed that forty-three money orders were purchased in Los Angeles and involved in this conspiracy. Furthermore, Delphine Porter testified that she saw about fifty money orders in an envelope held by Ross while in the presence of Hollins. The contested statement therefore, a statement which was not objected to by Hollins during closing argument, is not such a mischaracterization of the evidence that it would have raised the ire of the jury and prevented Hollins from receiving a fair trial.

■ The second contested statement occurred during the government's final closing argument. The prosecutor stated that:

"No deal was cut with Clay Edward Ross. He is doing 15 years for his involvement in this scam. But he's a Moe. He is a friend, and I do not mean to demean religion, but it is in fact used to corrupt, and when it is in fact used to commit crime—"

(R. 438). Hollins objected to this statement and the trial judge sustained the objection.

Although we believe this comment to be outside of the bounds of proper comment, we find that any possible error was harmless. We find that in the context of the trial as a whole, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty even if the disputed statement had not been made. Therefore, the prosecutor's comment is harmless error. *See United States v. Has-*

*tings,* 461 U.S. 499, 500–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983).

In sum, the decision of the district court is affirmed.