**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Louis G. COLLAZO,
Defendant-Appellant.**

No. 86–1284.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 4, 1986.

Decided April 8, 1987.

Shelly R. Kulwin, Chicago, Ill., for defendant-appellant.

William R. Hogan, Jr., Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and COFFEY, Circuit Judges and SWYGERT, Senior Circuit Judge.

COFFEY, Circuit Judge.

Louis G. Collazo, the defendant appellant, appeals his conviction of one count of conspiring to receive and unlawfully possess stolen checks in violation of 18 U.S.C. § 371 and two counts of aiding and abetting the unlawful possession of four stolen checks in violation of 18 U.S.C. §§ 2 and 1708. We affirm.

I.

The facts of this case, stipulated to at trial, are not in dispute.[1] During 1983 and January 1984, Louis G. Collazo was employed by the Illinois Department of Public Aid (IDPA) operating a photographic identification machine for the production of identification cards for IDPA clients.

Between July 1982 and March 1984, several individuals, one Juan Rosario, together with Pedro Menendez, Luis Santiago, Nereida Serrano, Rona Aillon and Rita Rosales were involved in a conspiracy[2] to receive

---

1. The parties agreed to a stipulated bench trial and filed a stipulated set of facts upon which the case was decided.

2. The stipulated facts to which Collazo agreed provided:

"Between July 1982 and March 1984, an agreement and *conspiracy* existed among co-defendant Juan Rosario, Pedro Menendez, Luis Santiago, Nereida Serrano, Rosa Aillon, Rita Rosales, and others to receive and to

possess checks which had been stolen from the mail and which they knew to have been stolen. The checks which were received and possessed included United States Treasury checks, Illinois Department of Public Aid checks, and other checks.

As part of this *conspiracy*, Juan Rosario, Pedro Menendez, and Luis Santiago would alter some of the stolen checks, so as to increase the face value of the checks. By the

and possess stolen checks.[3] Rosario, Menendez and Santiago altered and increased the face value of the checks issued. On four separate occasions Collazo produced fraudulent picture identification cards for various members of the conspiracy to correspond and match the names on the stolen checks. On three separate occasions, at Collazo's direction the false matching identification card he produced was returned to him immediately after securing the funds with a share of the proceeds.[4]

The defendant produced false identification cards: (1) on or about July 18, 1983, (2) between July 29, 1983 and August 11, 1983, (3) on or about November 18, 1983, and (4) on January 11, 1984. The last time Collazo produced and delivered a false identification card to Aillon (a member of the conspiracy), (January 11, 1984), Aillon was arrested after she attempted to cash a stolen check with one of the false identification cards that Collazo had processed. Aillon agreed to cooperate with the police and returned to the IDPA the next day with an undercover agent, who witnessed Aillon pay the defendant $100 for his production of the false identification card the previous day.

As a result of an investigation a sixty-six count indictment was filed against several defendants with Collazo being named in Counts one, thirty, thirty-one, forty-eight and sixty-five. Count one [5] charged Collazo with conspiring to receive and unlawfully possess stolen checks in violation of 18

---

use of false or fraudulent identification, Nereida Serrano, Rita Rosales, Rosa Aillon and others would cash the stolen checks at currency exchanges and small stores in Chicago, in the Northern District of Illinois. The proceeds of each check would be divided among members of the conspiracy concerned in the theft, alteration or cashing of each check.

By this stipulation, the defendant does not in any way admit or agree that he was a participant in the *conspiracy* described above."

(Emphasis added).

**3.** The checks which were stolen included checks from the United States Treasury and IDPA. In total, some 56 checks were involved.

**4.** Collazo received a total of $280 for producing the phony identification cards ($80, $100, and $100).

**5.** Count one of the indictment provided:

"1. Beginning in or before the month of July, 1982, and continuing till at least March, 1984, at Chicago, in the Northern District of Illinois, Eastern Division,
JUAN ANTONIO ROSARIO,
PEDRO MENENDEZ,
ROBERT MEDINA,
LUIS SANTIAGO,
MELQUIADES SANTIAGO,
RITA ROSALES,
ROSA LINDA AILLON,
MIKE A. MARTINEZ,
PETE MICHAEL GOMEZ,
RUTH RESTO,
NEREIDA SERRANO,
CARMEN SANTIAGO,
NELLIE VIRELLA,
CHARLES MORENO,
and LOUIS COLLAZO,

defendants herein, knowingly combined, conspired, confederated, and agreed among themselves and with other persons unknown to the grand jury, to commit certain offenses against the United States, namely to receive and unlawfully have in their possession checks which had been stolen, taken, embezzled and abstracted from and out of the mail, knowing the same to have been stolen, taken, embezzled, and abstracted, in violation of Title 18, United States Code, Section 1708.

2. It was part of this conspiracy that JUAN ROSARIO, PEDRO MENENDEZ, ROBERT MEDINA, LUIS SANTIAGO, MELQUIADES SANTIAGO, and other persons would obtain checks which had been stolen from the mail.

3. It was further a part of the conspiracy that JUAN ROSARIO, PEDRO MENENDEZ, and LUIS SANTIAGO would alter said stolen checks, and cause them to be altered, so as to increase their face value, and to make them more easy to cash.

4. It was further a part of the conspiracy that LOUIS COLLAZO would provide the other defendants with fraudulent Illinois Department of Public Aid identification cards for use in cashing the checks.

5. It was further a part of the conspiracy that the defendants JUAN ROSARIO, ROBERT MEDINA, LUIS SANTIAGO, RITA ROSALES, ROSA LINDA AILLON, MIKE A. MARTINEZ, PETE MICHAEL GOMEZ, RUTH RESTO, NEREIDA SERRANO, CARMEN SANTIAGO, NELLIE VIRELLA, and CHARLES MORENO would take the stolen checks to stores or currency exchanges to cash.

6. It was further a part of the conspiracy that the proceeds of the conspiracy were divided among and shared by the defendants.

7. It was further a part of the conspiracy that at least fifty-six stolen checks were cashed or presented for cashing."

U.S.C. § 371.[6] Counts thirty, thirty-one, forty-eight[7] and sixty-five charged Collazo with aiding and abetting the unlawful possession of four stolen checks on four separate occasions in violation of 18 U.S.C. § 2[8] and § 1708.[9]

Collazo and the prosecutor with the approval of the court stipulated to a bench trial and filed an agreed set of facts upon which the judge decided the case. The presiding judge found Collazo guilty of Counts one (conspiracy to receive and possess stolen checks), forty-eight and sixty-five (aiding and abetting the unlawful possession of stolen checks). Regarding the conspiracy charged in Count one, the trial judge found that Collazo knowingly and intentionally joined the conspiracy to receive and possess stolen checks in that the defendant Collazo "[a]ccommodated the conspirators in their conspiratorial activities by providing them with false welfare identification cards" on four separate occasions. The district court found that Collazo was guilty of aiding and abetting the unlawful possession of two stolen checks under the *Pinkerton* doctrine, (as established in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)), in that he joined the conspiracy between July 29 and August 11, 1983, and was therefore guilty of any and all illegal acts done in furtherance of the conspiracy that transpired after that date.

Collazo raises two issues on appeal: Whether the evidence was sufficient to convict him (1) of conspiring to receive and unlawfully possess stolen checks under 18

---

**6.** Section 371, Title 18 provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

**7.** Count forty-eight of the indictment of which Collazo was convicted provided:

"On or about November 18, 1983, at Chicago, in the Northern District of Illinois, Eastern Division,

JUAN ANTONIO ROSARIO
PEDRO MENENDEZ, and
RITA ROSALES,

defendants herein, unlawfully had in their possession a certain check of the State of Illinois, number 4285826, payable to Bridgette Robinson in the altered amount of $696.80, and dated November 18, 1983, which had been stolen, taken, embezzled, and abstracted, from and out of the mail, knowing the same to have been stolen, taken, embezzled, and abstracted;

In violation of Title 18, United States Code, Section 1708; and

LOUIS COLLAZO

defendant herein, knowingly aided and abetted Juan Antonio Rosario, Pedro Menendez, and Rita Rosales in committing the above-described offense;

In violation of Title 18, United States Code, Sections 2 and 1708."

**8.** Section 2, Title 18 provides:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

**9.** Section 1708, Title 18 provides:

"Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

U.S.C. § 371, and (2) of aiding and abetting the unlawful possession of two stolen checks in violation of 18 U.S.C. § 2 and § 1708.

## II.

■ "In order to establish the crime of conspiracy, the government must prove that there was an agreement between two or more persons to commit an unlawful act, that the defendant was a party to the agreement, and that an overt act was committed in furtherance of the agreement by one of the co-conspirators." *United States v. Noble,* 754 F.2d 1324, 1328 (7th Cir.1985). Collazo concedes that a conspiracy existed to receive and possess stolen checks. He argues, however, that there is insufficient evidence to establish that he was a participant in the conspiracy. We have previously stated that "Once the Government proves the existence of a conspiracy the Government need only offer 'slight evidence' to prove that an individual was a member of the conspiracy." *United States v. Gironda,* 758 F.2d 1201, 1217 (7th Cir. 1985).

The trial judge, in finding Collazo guilty of the conspiracy charged in Count one, stated:

"Now, the stipulated evidence, in addition to that stipulation of the conspiracy, demonstrates that on four separate occasions, Mr. Collazo accommodated the conspirators in their conspiratorial activities by providing them with false welfare identification cards.

I believe that the evidence is sufficient for a reasonable mind to conclude beyond a reasonable doubt that Mr. Collazo knowingly and intentionally joined the conspiracy.

\* \* \* \* \* \*

The stipulated facts show beyond a reasonable doubt that the defendant Louis Collazo knowingly and intentionally joined the conspiracy described in Count 1 of the indictment and thereby became a member of the conspiracy, and is responsible for the acts of the conspiracy."

"When reviewing a claim of insufficient evidence this court must view the evidence in the light most favorable to the prosecution ..." *United States v. Hollins,* 811 F.2d 384, 388 (7th Cir.1987) (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). Our standard of review in reviewing the trial court's decision is set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

"[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."

443 U.S. at 319, 99 S.Ct. at 2789 (citation omitted) (emphasis in original).

Collazo asserts that since all of his activities took place after the unlawful receipt and possession of the stolen checks had occurred, his conviction of conspiring to receive and possess stolen checks from the United States mails must be reversed. The defendant further argues that he (1) never possessed any of the checks, (2) never exercised any dominion or control over the checks, and (3) had no knowledge that the checks were stolen.

The facts set forth that on four occasions Collazo produced false identification cards for various members of the conspiracy to correspond with the names on checks in the possession and control of the members of the conspiracy. Each time he produced a fraudulent identification card he directed that the false identification card be returned to him as well as a percentage of the money received from the cashing of the

same. The defendant Collazo insisted and received cash proceeds from the cashing of the checks three of the four times he provided the false identification. The district judge stated that he had a reasonable doubt as to whether Collazo was a member of the conspiracy the first time he provided a fraudulent identification card. However, the trial court found that Collazo was a knowing member of the conspiracy when the first instance of his improper conduct (on or about July 18, 1983) was combined with the second occasion when he again produced a false identification card (between July 29, 1983 and August 11, 1983). The trial judge also found that there was a reasonable doubt as to whether Collazo was a member of the conspiracy at the time he produced the second fraudulent identification card (between July 29, 1983 and August 11, 1983) but that his subsequent acts were done as a member of the conspiracy.

We note in analyzing Collazo's sufficiency claim that "[P]articipation in a criminal conspiracy may be shown through *circumstantial evidence* ... Circumstantial evidence may include whether the defendant has a stake in the outcome of the conspiracy." *United States v. Xheka*, 704 F.2d 974, 988 (7th Cir.), *cert. denied* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983) (citations omitted) (emphasis added). In *United States v. Marquardt*, 786 F.2d 771, 780 (7th Cir.1986), we stated that " 'circumstantial evidence is of equal probative value to direct evidence.' " (quoting *United States v. Towers*, 775 F.2d 184, 188 (7th Cir.1985)). In addition, "[a] single act is enough evidence if the circumstances *permit the inference* that the act was 'intended to advance the ends of the conspiracy.' " *United States v. Silva*, 781 F.2d 106, 109 (7th Cir.1986) (quoting *Xheka*, 704 F.2d at 989) (emphasis added). Finally, the Supreme Court has stated that: "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and collocation of circumstances'." *Glasser v. United States*, 315 U.S.

60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (quoting *United States v. Manton*, 107 F.2d 834, 839 (2d Cir.1939)).

On four different occasions, Collazo produced fraudulent photographic identification cards at the request of members of the conspiracy to correspond with the names inscribed as the payees on the checks. Each time Collazo produced a false identification card upon request he ordered that the recipient of the same return a share of the illegally obtained funds to him as well as the fraudulently issued identification card. On three of the occasions after he produced a false identification card upon request of members of the conspiracy the record reflects he received payments of $80, $100, and $100 for a sum total of $280. In furnishing the false identification cards to the members of the conspiracy Collazo provided the identification necessary for the cashing of the stolen checks and received a percentage of the proceeds therefrom. He actively assisted and participated in the overall conspiracy as charged to receive and possess stolen checks. Collazo thus participated in the continuation of the scheme, for without the false identification cards the conspirators would have been unable to cash the stolen checks. His actions in producing the false identification cards were unarguably "intended to advance the ends of the conspiracy." See *United States v. Xheka*, 704 F.2d 974, 989 (7th Cir.1983) (quoting *United States v. Mancillas*, 580 F.2d 1301, 1308 (7th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978)). Further, Collazo had a financial interest and stake in the conspiracy in that he received a share of the funds obtained from the cashing of the "raised" checks.

In viewing the evidence in the light most favorable to the prosecution we hold there was ample evidence for the trial judge to conclude beyond a reasonable doubt that Collazo joined and actively participated in the crime of conspiracy to receive and possess checks stolen from the United States mail.[10]

---

**10.** The defendant's reliance on *United States v. Keach*, 480 F.2d 1274 (10th Cir.1973) and *Rob-* *erts v. United States*, 416 F.2d 1216 (5th Cir. 1969) is misplaced. These two cases involved

## III.

Collazo also argues that there was insufficient evidence for the trial judge to convict him of aiding and abetting the unlawful possession of two of the stolen checks (charged in Counts forty-eight and sixty-five). Collazo asserts the trial court erred in finding him guilty of aiding and abetting in the illegal possession of stolen checks, when, according to Collazo's interpretation, the evidence demonstrates that he initially dealt with the checks only after the act of unlawful possession of the checks was completed. The defendant's argument overlooks the fact that the members of the conspiracy were still in possession of the fraudulent checks when they displayed them to him in order that he might produce the matching fraudulent identification cards, and further, the members of the conspiracy continued to possess the fraudulent instruments and did not relinquish possession until such time as they passed them.

As with the first issue our standard of review is whether *"[a]ny rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."* *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

The district court based its finding of Collazo's guilt of aiding and abetting charged in Counts forty-eight and sixty-five upon the *Pinkerton* doctrine derived from the Supreme Court case of *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).[11]

In *Pinkerton* the Supreme Court held that if a conspiracy is found to exist of which the defendant is a member he may be held responsible for the substantive offenses committed by his co-conspirators in furtherance of the conspiracy.

This circuit has interpreted *Pinkerton* as holding "[t]hat evidence of being part of a conspiracy would be sufficient to support conviction of substantive offenses committed in furtherance of the conspiracy." *United States v. Varelli*, 407 F.2d 735, 749 (7th Cir.1969). In *United States v. Covelli*, 738 F.2d 847, 858 (7th Cir.), *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984) this court stated "Under *Pinkerton* '[o]nce the conspiracy and the defendant's knowing participation in it have been established beyond a reasonable doubt, the defendant will be held vicariously liable for the furtherance of the conspiracy by his co-conspirators.'" (quoting *United States v. Sampol*, 636 F.2d 621, 676 (D.C.Cir. 1980)).

factual situations that failed to support sufficient evidence to sustain a conviction. In *Keach*, the Tenth Circuit reversed a conviction for conspiracy, where the defendant, Robert Seay, had served as a lookout while counterfeit bills were being produced, stating that he never exercised any custody, control or possession of the counterfeit money. The Tenth Circuit went on to state that everything done to carry out the conspiracy was done by another individual and that the defendant's actions occurred after the conspiracy had been consumated. In *Roberts*, the Fifth Circuit reversed a conspiracy conviction involving counterfeiting where the defendant knew of the conspiracy and its objectives, associated closely with the members of the conspiracy, and even destroyed some of the counterfeit money after one of her compatriots was arrested. The Fifth Circuit held the evidence failed to demonstrate that the defendant had joined the conspiracy before it was consumated. The instant case is easily distinguishable: Collazo clearly assisted the repeated illegal receiving and possessing of the checks by providing false identification cards to aid in the cashing of the stolen checks and demanded the return of the false identification cards as well as a share of the proceeds from the stolen checks after each check was cashed, thus his participation encouraged the conspiratorial scheme.

11. In *Pinkerton*, two brothers, Daniel and Walter Pinkerton, conspired to violate several parts of the Internal Revenue Code. Daniel Pinkerton was convicted of committing a variety of substantive offenses that were the objectives of the conspiracy he and his brother created, despite the fact that the evidence established that his brother Walter was the one who actually committed the offenses. In upholding Daniel Pinkerton's conviction the Supreme Court stated,

"An overt act is an essential ingredient of the crime of conspiracy ... If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense."

328 U.S. at 647, 66 S.Ct. at 1184.

The trial judge found Collazo guilty of aiding and abetting the unlawful possession of checks alleged in Counts forty-eight (on or about November 18, 1983) and sixty-five (on January 11, 1984) but not guilty of Counts thirty (on or about July 18, 1983) and thirty-one (between July 29 and August 11, 1983) since there was a reasonable doubt that Collazo was a member of the conspiracy at the time the offenses charged in Counts thirty and thirty-one occurred, stating:

"I would have difficulty in finding that the single act on the 18th of July of 1983, which is described in Count 30—that it was that event that, at that point, he had become a member of the conspiracy.

Now, we look back and we—as I say, we look at the totality of the evidence. But under the Pinkerton Doctrine, he must be a member of the conspiracy beyond a reasonable doubt at the time the offenses in furtherance of the conspiracy are committed.

And I have a reasonable doubt as to whether he joined the conspiracy on the 18th of July of 1983.

On the period of time alleged in Count 31, between July 29, 1983 and August 11, 1983, the transaction alleged in Count 31, when combined with the transaction alleged in Count 30, persuades me beyond a reasonable doubt that at that point, he became a knowing, wilful and intentional member of the conspiracy.

But I have some doubt as to whether he was a member of the conspiracy at the time Santiago, Serrano and Martinez came into possession of the check alleged in Count 31.

So I'm going to find him not guilty of Count 31.

But by the time 48 and 65 come along, at this point he has become, prior to those transactions, and he is then a knowing, wilful, intentional member of the conspiracy, and he is vicariously liable for the offenses committed by his co-conspirators in furtherance of the conspiracy."

The district court found that the substantive offenses charged in Counts forty-eight and sixty-five were committed: (1) by members of the conspiracy, (2) while Collazo was a member of the conspiracy, and (3) pursuant to and in furtherance of the conspiracy.

Since the stipulated facts establish that members of the conspiracy committed the substantive offenses charged in Counts forty-eight and sixty-five pursuant to the conspiracy, the only question we must address is whether the evidence was sufficient to find Collazo to be a member of the conspiracy at the time the acts were committed. The trial court properly found that a reasonable doubt existed as to whether Collazo was a member of the conspiracy at the time the substantive offenses in Counts thirty (on or about July 18, 1983) and thirty-one (between July 29, 1983 and August 11, 1983) took place. We hold the district court also properly found that when considering Collazo's activities on those two occasions together (production of false identification cards, his request that the cards he produced be returned with a share of the proceeds, and his receipt of $80 on one of the occasions) they establish beyond a reasonable doubt that he joined the conspiracy between July 29, 1983 and August 11, 1983; thus we hold the trial court properly held Collazo to have aided and abetted the offenses charged in Counts forty-eight and sixty-five of the indictment.

## IV.

We hold the district court properly found Collazo guilty of conspiring to receive and possess stolen checks as alleged in Count one of the indictment. His production on four separate occasions of the false identification cards for the members of the conspiracy provided the necessary means for the other members of the conspiracy to establish their identity and thus cash the stolen checks. Thus it is clear that Collazo actively assisted and participated in the conspiracy to receive and possess stolen checks while having a financial stake (a share of the proceeds of the cashing of the stolen checks) in the continuation of the fraudulent scheme. We also hold that the trial court properly found Collazo guilty of

aiding and abetting the unlawful possession of checks charged in Counts forty-eight and sixty-five of the indictment since Collazo was a member of the conspiracy at the time these checks were stolen.

AFFIRMED.