110 F.3d 65
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James H. DAVIS, Defendant-Appellant.
 No. 96-5306.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1997.
 
 Before: KENNEDY, CONTIE, and NORRIS, Circuit Judges
 PER CURIAM.
 
 
 1
 Defendant-appellant, James Howard Davis, appeals his conviction and sentence for manufacture of phenylacetone ("P2P"). For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 After being informed by a Chattanooga chemical supplier that James Davis and Michael Cannon were purchasing large amounts of chemicals that were used to manufacture methamphetamine with cash, agents of the Drug Enforcement Administration ("DEA") placed the room defendants were renting in a warehouse under surveillance for 28 days.
 
 
 3
 On October 20, 1994, at about 1 a.m., the agents executed a search warrant at the rental space accompanied by a DEA chemist, Harry Hanel, who took samples of the chemicals present. Because it was determined that the rental space lab was near a school and there was a high risk of explosion, the DEA decided to shut down the lab immediately. The DEA agents acquired a second search warrant and about 3 p.m. later that day, the officers re-entered the laboratory. Defendants Davis and Cannon were inside. Davis was on the telephone and Cannon was at a workbench dealing with a chemical process.
 
 
 4
 The DEA chemist, Mr. Hanel, took samples from numerous containers during the second search as well. The rental space contained a workbench, heating plates, heating flasks, various containers of chemicals, a vent hood with a fan and blower, a homemade hydrogenator, and various other laboratory equipment. There were many books in the lab, but no books related to perfume or perfume-making. On top of a refrigerator, a clipboard, containing a Xerox copy of a manual for the manufacture of methamphetamine, was found. No pleasant or sweet smelling odors were detected in the lab. The officers also seized a small, yellow writing tablet, which was found on the workbench. The tablet's pages were turned back and revealed an inner page that contained a handwritten entry which stated, "Time it takes to cool crystals down to minus 10 Celsius, put on at 5:30 a.m." No residue of methamphetamine was found in the lab.
 
 
 5
 On June 13, 1995, a grand jury returned a two-count indictment against defendants Davis and Cannon. The indictment charged both defendants in the first count with conspiracy to manufacture methamphetamine, and in the second count with manufacturing P2P in violation of 21 U.S.C. § 841(a)(i). Both defendants pled not guilty, and the trial began on November 17, 1995.
 
 
 6
 On November 28, 1995, the jury returned a verdict finding both defendants not guilty on the first count for conspiracy to manufacture methamphetamine, but guilty on the second count for the manufacture of P2P. Defendant Davis filed a motion for a new trial and/or judgment of acquittal on December 4, 1995, which was denied by the district court on January 10, 1996. On February 26, 1996, the district court sentenced defendant Davis to 33 months in prison and assessed a $3,000 fine. Defendant Davis timely filed a notice of appeal on March 4, 1996.
 
 II.
 
 7
 We must first decide whether there was sufficient evidence at trial to support defendant Davis' conviction for manufacturing P2P. On appeal from a criminal conviction, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Woods, 877 F.2d 477, 479 (6th Cir.1989). Every reasonable inference must be drawn in favor of the government, and the evidence need not exclude every logical hypothesis other than guilt. United States v. Green, 548 F.2d 1261, 1266 (6th Cir.1977).
 
 
 8
 Defendant Davis concedes that he manufactured phenylacetone, but argues it is clear that he did not intend to use it as an ingredient of the drug methamphetamine because there were no traces of methamphetamine found in the lab. In the alternative, he argues that he is not guilty because he made phenylacetone only for the purpose of using it to produce diphenylacetone, which he needed in order to make perfume. He argues that because the phenylacetone would have been destroyed in the process of making diphenylacetone, a legal substance, he is not guilty of making an illegal controlled substance because he never intended to use P2P as an end product and was not making it as a component in the manufacture of methamphetamine.
 
 
 9
 This argument has no merit. As the Seventh Circuit stated in United States v. Lendmann, 757 F.2d 916, 918 (7th Cir.1985):
 
 
 10
 [A] person who concededly manufactures or attempts to manufacture, a controlled substance without the intent to distribute but solely to use as an intermediate step in a chemical process which contemplates destruction of all the illicit substance upon completion of the process falls within the criminal prohibitions of 21 U.S.C. §§ 841....
 
 
 11
 We agree with the Seventh Circuit that a plain reading of 21 U.S.C. §§ 841(a)(i) and 822(b) indicates that any person who is not registered by the Attorney General for a controlled substance is not authorized to manufacture it, and thus is not exempt from prosecution under § 841, even if he manufactures it as an intermediate step in a chemical process. Id.
 
 
 12
 Viewing the evidence and all reasonable inferences therefrom in a light most favorable to the government, we conclude the record contains sufficient evidence from which a rational trier of fact could find defendant Davis guilty of the intentional manufacture of P2P beyond a reasonable doubt. When the DEA raided the lab, the DEA seized 174 grams of a substance containing the finished P2P product. Davis admitted compounding the 174 grams of P2P found in the laboratory. The manual found in the lab had instructions on how to manufacture P2P as a precursor chemical in the manufacture of methamphetamine. The agents also found the other chemicals and equipment necessary to make methamphetamine using the bomb method. It is uncontested that P2P is an ingredient needed to make methamphetamine by the bomb method and is an illegal controlled substance. A small yellow notebook on the workbench in the lab contained handwritten notes relating to the making of P2P.
 
 
 13
 Moreover, there was sufficient evidence to establish that defendant's alibi was not credible. Although co-defendant Cannon testified that he was using the methamphetamine manual with instructions on how to manufacture P2P in order to create a hydrogenator to make perfume, there were no perfume-making manuals in the lab, and the government's expert testified that a hydrogenator is not used to make perfume. Defendants did not have in the lab any bromine, which was needed in order to produce Di-P2P, which they alleged was their purpose in creating P2P in the process of making perfume. The evidence indicated that there was no reason why, if defendants had wanted to make diphenylacetone for the manufacture of perfume, defendants could not have gone to Durr-Fillauer, where they had purchased other chemicals, and purchased the Di-P2P. There was evidence that such a purchase would have been less expensive and much easier to accomplish than to try to manufacture diphenylacetone in the lab. The government's witness, who was experienced in the perfume industry, testified that he was not aware of any Di-P2P use in the perfume industry and that the Mercks Index indicated that P2P was an illegal controlled substance with no uses in the perfume industry. Moreover, the evidence indicated that Di-P2P can be manufactured without first making the illegal controlled substance P2P. In any event, if defendants wanted to manufacture P2P as a precursor chemical in the process of making perfume, they needed to register with the Attorney General, which they failed to do.
 
 
 14
 For all these reasons, we believe that a rational trier of fact could have found the essential elements of the crime of the intentional manufacture of P2P, an illegal controlled substance, beyond a reasonable doubt. The district court is affirmed on this issue.
 
 III.
 
 15
 We must next decide whether the district court erred in failing to grant defendant's second requested jury instruction and whether the district court properly instructed the jury after receiving a question about innocent use.
 
 
 16
 The instruction at issue, which defendant requested be given to the jury, read as follows:
 
 
 17
 Ladies and Gentlemen, I further instruct you in reference to the Second Count of the indictment that the Defendants would not be guilty of any criminal offense for the possession or manufacture of phenylacetone if their intent in the possession or manufacture of said substance was to have said substance consumed or destroyed in the manufacturing process wherein the Defendants were attempting to use said phenylacetone to produce a lawful product and not an illegal drug.
 
 
 18
 Defendant contends that this instruction was an accurate statement of the law, and there was no reason for the district court's failure to provide it to the jury.
 
 
 19
 A district court's refusal to give a requested jury instruction is reversible error only if the instruction was correct, not substantially covered by the jury charge, and so important that failure to give it substantially impaired the defense. United States v. Sassak, 881 F.2d 276, 279 (6th Cir.1989). In the present case, the district court did not err in refusing to give defendant's proposed jury instruction which, in essence, stated defendant Davis acted lawfully if he attempted to make P2P, an illegal controlled substance, in the process of making perfume. The proposed jury instruction was not necessary, because it is a misstatement of the law. Lendmann, 757 F.2d at 918. Moreover, the district court extensively instructed the jury that defendant Davis' conduct had to be knowing or intentional, and that Davis could be found guilty only if he purposely intended to violate the law.
 
 
 20
 Defendant also claims that the district court erred in its response after the jury submitted a question during deliberations. The jury, after deliberating for some period of time, sent out the following written request for additional instructions:
 
 
 21
 If Defendant was making "Di-P2P" and innocently made P2P along the way, is he guilty or can he have in his possession for "other innocent reasons," to-wit: making Di-P2P.
 
 
 22
 In response to this jury request, the district court answered as follows:
 
 
 23
 A person would violate 21 U.S.C. § 841(a)(i) by intentionally manufacturing phenylacetone (P2P) for any purpose. However, a person would not violate this statute if he accidentally or innocently made phenylacetone (P2P) while in the process of making a non-controlled chemical compound such as diphenylacetone (emphasis added).
 
 
 24
 Defendant Davis contends that this response was confusing to the jury, because it indicates that a person would violate the statute if he made P2P "for any purpose." Defendant alleges the response conveys that defendant would be guilty if he made P2P for an innocent purpose, because "an innocent purpose" comes within the rubric of "for any purpose."
 
 
 25
 The district court's actions in responding to questions from the jury are reviewed for an abuse of discretion. United States v. August, 984 F.2d 705, 712 (6th Cir.1992), cert. denied, 510 U.S. 854 (1993). In the present case, defendant did not object to the district court's response to the jury's request for additional instructions. Therefore, defendant has waived the right to challenge the district court's response on appeal. Moreover, the court's statement that a person would violate 21 U.S.C. § 841(a)(i) by intentionally manufacturing P2P for any purpose is a correct statement of the law. The district court is affirmed on this issue.
 
 IV.
 
 26
 We must finally decide whether the district court erred by admitting hearsay at the sentencing hearing relating to the total amount of phenylacetone defendant could have manufactured. Factual determinations about the amount of drugs for which a defendant will be held accountable are subject to the clearly erroneous standard of review. United States v. Thomas, 49 F.3d 253, 259 (6th Cir.1995).
 
 
 27
 In the present case, the United States probation officer interviewed the DEA chemist, Hanel, for the presentence report. Hanel told the probation officer that there were enough component chemicals in the rental space lab to make an additional 348 grams of a substance containing P2P. At the sentencing hearing before the district court, the probation officer testified about what the DEA chemist had told him. The district court relied on this information and then determined the drug quantity for which defendant should be held accountable. The district court found that defendant was accountable for the 174 grams of P2P seized from the lab, and also for the additional 348 grams which the DEA chemist said could have been made from the additional chemicals found in the lab. Based on this amount of P2P, the district court sentenced defendant to 33 months in prison.
 
 
 28
 Defendant contends that there was no showing whether the hearsay opinion by a government chemist about the amount of chemicals remaining in the lab was merely a guess or a rough estimate. Defendant also contends there was no showing that these alleged chemicals could not have been used as ingredients for making legal substances. He contends that the chemicals referred to by Mr. Hanel in his conversation with the probation officer were deliberately destroyed by the government agents shortly after their seizure. Defendant argues that his attorney was not allowed the opportunity to cross-examine Mr. Hanel about how Hanel arrived at his opinion about the quantity of these materials. Defendant argues that there was, therefore, an absence of credible testimony on which the trial court could base his decision to enhance defendant's sentence by the extra 348 grams of P2P.
 
 
 29
 As previously stated, a district court's determination of drug quantity is reviewed for clear error. United States v. Jennings, 83 F.3d 145, 149 (6th Cir.), cert. denied, 117 S.Ct. 411 (1996). The quantity of drugs must be established by a preponderance of the evidence, and when a precise measurement is not possible, the court may approximate this amount. Id. at 149.
 
 
 30
 In Jennings, the district court accepted the chemist's analysis of how much methamphetamine could have been produced if the manufacturing process had been completed, and the court of appeals upheld the trial court's finding. We believe the same rationale applies in the present case. The evidence indicated that all five chemicals needed to make P2P were present in the lab, and that defendants could easily have made more P2P. Although hearsay is inadmissible at trial, it is admissible at sentencing. United States v. Polselli, 747 F.2d 356, 358 (6th Cir.1984), cert. denied, 469 U.S. 1196 (1985). A defendant must show that the hearsay evidence was materially false, which defendant has failed to do. In the present case, evidence was submitted at trial, which substantiates that Hanel carefully measured the amount of each chemical. Exhibits admitted into evidence included photographs of the containers holding the chemicals taken at the time of the execution of the search warrant. Hanel testified about the process he used to measure the chemicals in each of the containers. He indicated that he examined the chemicals present and took a sample from each container for analysis in the lab. He noted the size of the container from which each sample was taken in order to be able to determine the total amount of the chemical. Defendant had the opportunity to cross-examine Hanel about his methods at trial and could have requested his presence at the sentencing hearing. However, he failed to do so. Also in his objections to the presentence report, defendant did not argue that the additional 348 grams of P2P were based on hearsay which was unreliable.
 
 
 31
 Because hearsay testimony is admissible at a sentencing hearing, the district court was not clearly erroneous in finding that defendant's sentence should be enhanced by the additional 348 grams of P2P, which the DEA chemist said could have been made from the chemicals remaining in the lab.
 
 V.
 
 32
 To conclude, the conviction and sentence of defendant are hereby AFFIRMED.