**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Holly BROCK, Jr., Defendant-Appellant.**

**No. 84–1854.**

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 1985.

Decided Feb. 11, 1986.

Victor M. Pilolla, Chicago, Ill., for defendant-appellant.

Howard Pearl, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and CAMPBELL, Senior District Judge.*

ESCHBACH, Circuit Judge.

Holly Brock, Jr. entered a conditional guilty plea to one count of conspiring to import and to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 963. He was sentenced to six months incarceration and four years and six months probation. He appealed from the district court's denial of his "Motion for Indictment Dismissal" pursuant to Federal Rule of Criminal Procedure 11(a)(2). He contends: (1) that pre-indictment delay of over four years denied him his fifth amendment right of due process; (2) that post-indictment delay of two and one-half years violated his sixth amendment right to a speedy trial; and (3) that he was not brought to trial within the time limits of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). For the reasons stated below, we will affirm Brock's conviction and the district court's denial of his motion to dismiss the indictment.

## I

On August 12, 1977, Brock was arrested at Chicago's O'Hare airport after he picked up a package that contained approximately 19 grams of a mixture including cocaine. A complaint charging Brock with possession of cocaine was filed; however, the government dismissed the complaint shortly after the arrest to permit a broader investigation of Brock's activities to proceed.

On October 14, 1981, a federal grand jury indicted Brock on one count of conspiracy to import and to possess with intent to distribute cocaine and one count of possession with intent to distribute cocaine. The conspiracy count recited eight overt acts. The first seven occurred between January 10, 1975 and October 30, 1976. The possession count and the eighth overt act charged in the conspiracy count were based upon Brock's alleged possession of cocaine at the date of his arrest on August 12, 1977.

## II

Brock concedes that the conspiracy and possession charges were brought within the five-year statute of limitations. *See* 18 U.S.C. § 3282. Nevertheless, he contends that the four and one-half years delay between his arrest and the indictment deprived him of due process. We disagree.

█ Even if an indictment is returned within the limitations period, pre-indictment delay might constitute a due process violation if it prejudices the defendant. *See United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). The defendant, however, bears the burden of showing "actual and substantial prejudice to his defense." *United States v. Williams*, 738 F.2d 172, 175 (7th Cir.1984).[1]

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, sitting by designation.

1. There exists conflicting authority within this circuit as to whether the defendant bears the burden of proving that the government delayed indictment for an impermissible purpose. *Compare United States v. Solomon*, 688 F.2d 1171, 1179 (7th Cir.1982) ("The government need not explain the reason for the delay until after the defendant has met his burden of establishing actual prejudice."), *and United States v. King*, 593 F.2d 269, 272 (7th Cir.1979) ("[O]nce the defendant has proven (1) actual prejudice; (2) resulting from the delay, the burden shifts to the Government to show why the delay was

necessary."), *with United States v. Watkins*, 709 F.2d 475, 479 (7th Cir.1983) ("A pre-indictment delay will not violate due process unless the defendant is able to prove that the delay caused actual and substantial prejudice ... and that the government delayed indictment for tactical advantage or some other impermissible reason."), *and United States v. Sweeney*, 688 F.2d 1131, 1139 (7th Cir.1982) ("[T]he defendants must establish that they were actually prejudiced by the delay, that the delay was unnecessary, and further that there was an ulterior motive on the part of the prosecution to interfere with the defendants' trial."). Because Brock failed to prove that the delay prejudiced his defense, we need not decide whether he bears the additional burden of proving that the government delayed

Brock's sole showing of prejudice consisted of the unsupported assertion in his Motion for Indictment Dismissal that his memory of events that occurred between 1975 and 1977 might have faded.[2] Such an unsubstantiated allegation is insufficient to establish actual and substantial prejudice. *Id.* at 175–76 (no prejudice despite death of defense witness); *United States v. Watkins,* 709 F.2d 475, 479 (7th Cir.1983) ("a general assertion that the mere passage of time prevented [defendant] from credibly reconstructing the [relevant] events" does not establish actual and substantial prejudice); *United States v. Solomon,* 688 F.2d 1171, 1179–80 (7th Cir.1982) (no prejudice despite death of two defense witnesses).

The United States Attorney, of necessity, enjoys broad discretion in setting prosecutorial priorities. In deciding whether, when, and on what charges to prosecute, he or she weighs the strength of the case, its effect on other investigations, the specific and general deterrence value, the limited availability of prosecutorial resources and the government's enforcement priorities. The choice of whether and when to prosecute thus is ill suited to judicial review. *See Wayte v. United States,* —— U.S. ——, ——, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *United States v. Lo-*

vasco, 431 U.S. 783, 790–96, 97 S.Ct. 2044, 2048–52, 52 L.Ed.2d 752 (1977).

■ In this case, the government filed charges against Brock shortly after his 1977 arrest; however, it dismissed these charges after David DeVorre, a Drug Enforcement Administration ("DEA") agent assigned to the Los Angeles office, reported that he was conducting a broader investigation of Brock's cocaine importation and distribution conspiracy. Because the government delayed prosecution for investigative purposes, it was not until 1981 that the government chose to indict Brock on charges arising from his 1977 arrest.[3] Since the pre-indictment delay did not prejudice Brock's defense, we conclude that the government did not violate due process by indicting Brock over four years after his arrest.

■ Furthermore, the indictment charged Brock with conspiring to import and to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 963 "[f]rom in or about November, 1974, to the present [October 14, 1981]." Unlike other conspiracy charges, it is unnecessary to allege an overt act in furtherance of a conspiracy in violation of 21 U.S.C. §§ 846 and 963. *See, e.g., United States v. Elledge,* 723 F.2d 864, 866 (11th Cir.1984).[4]

---

prosecution for an improper purpose. *See United States v. Williams,* 738 F.2d 172, 175 n. 1 (7th Cir.1984) (noting but not resolving this conflict).

**2.** The Motion for Indictment Dismissal states in pertinent part:

These matters are of some moment to Mr. Brock who now, lacking the memory of "an Einstein" .. hardly is in a position to attempt to recall and reconstruct events that occurred seven, eight, nine or ten years ago.

. . . .

How does counsel prepare .. in order to be effective. Assume for the moment that the power of recollection is either lost .. or so terribly inadequate that the defendant lacks the ability to assist counsel in the preparation of a defense.

*Id.* at 7 (punctuation of original). Indeed, Brock argued in his motion that "an affirmative showing of prejudice by the defendant is unnecessary." *Id.* at 8 n. 6.

**3.** Brock has not even suggested that the government might have been motivated by any improper purpose when it dismissed charges in

1977 and indicted him again in 1981. Indeed, we presume that the government's investigation during the interim was successful since Brock stipulated that he had committed numerous overt acts in furtherance of the conspiracy to import and distribute cocaine.

**4.** 21 U.S.C. §§ 846 and 963 both provide:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

We conclude that, for two reasons, these sections do not require commission of an overt act. First, the statutory language, in contrast to that of 18 U.S.C. § 371, does not require an overt act. Second, the statutory predecessors to these sections did not require an overt act and the legislative history of the Drug Abuse Prevention and Control Act of 1970, of which these two sections are a part, nowhere suggests that Congress in-

"With respect to conspiracy statutes [such as sections 846 and 963] that do not require proof of an overt act,.... [t]he conspiracy may be deemed to continue as long as its purposes have neither been abandoned nor accomplished." *United States v. Coia,* 719 F.2d 1120, 1124 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984). With respect to the conspiracy count, therefore, there was no pre-indictment delay from the completion of the offense to the date of the indictment because the offense may be considered to have continued up to the date of the indictment.

### III

Brock also argues that post-indictment delay of nearly two and one-half years between his indictment on October 14, 1981, and his guilty plea on March 29, 1984, violated his sixth amendment right to a speedy trial. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set forth the four factors to be considered to determine whether post-indictment delay deprived a defendant of his right to a speedy trial. Those factors are the length of the delay, the reasons for the delay, the nature of defendant's assertion of his right to a speedy trial, and the prejudice caused by the delay. *Id.* at 530, 92 S.Ct. at 2192. We will examine each element in turn.

### A. *Length of delay*

The length of the delay in this case is measured from the date of the issuance of the warrant for Brock's arrest, October 14, 1981, to that of his guilty plea. *See United States v. Deleon,* 710 F.2d 1218, 1220 (7th Cir.1983). This period is approximately two and one-half years. The government in its appellate brief concedes that a delay of this length requires examination of the other three *Barker* factors. *See, e.g., United States v. Jackson,* 542 F.2d 403, 407 (7th Cir.1976) (one-year delay is presumptively prejudicial).

tended to change this law. *See, e.g., United States v. DeJesus,* 520 F.2d 298, 301 (1st Cir.),

### B. *Reasons for delay*

With respect to the reasons for delay, we will consider separately the periods between Brock's indictment and arrest and from his arrest to his guilty plea.

### 1. *Delay from Indictment to Arrest*

Again, Brock was indicted and a warrant was issued for his arrest on October 14, 1981; however, he was not placed in federal custody on the conspiracy and possession charges until July 19, 1983. The explanation for this 21-month delay is that, notwithstanding the government's efforts to locate and arrest him, Brock, successfully for a time, attempted to avoid arrest.

The government diligently searched for Brock after he was indicted. On October 21, 1981, one week after the indictment was handed down, David DeVorre, the DEA agent who directed the investigation out of the Los Angeles office, informed Brock's counsel, James Crouch, of the indictment and requested Crouch to instruct Brock to surrender himself. DeVorre completed a Fugitive Declaration Report on Brock and placed Brock's name in three law enforcement computer databases: the National Crime Information System ("NCIS"), which is administered by the Federal Bureau of Investigation ("FBI") and contains the names of persons against whom there are outstanding warrants; the Narcotics and Dangerous Drugs Information System ("NADDIS"), which is used by the DEA and includes information about individuals suspected of being involved in illegal drug transactions; and the Treasury Enforcement Communications System ("TECS"), which is operated by the Treasury Department and contains the names of fugitives to be detained at customs. Also on October 21, 1981, DeVorre instructed agents in the DEA's San Francisco and Chicago offices to search for Brock at the last-known addresses of the defendant, his family and associates.

*cert. denied,* 423 U.S. 865, 96 S.Ct. 126, 46 L.Ed.2d 94 (1975).

William Ruzzamenti, a DEA agent in San Francisco, had looked for Brock at approximately ten Bay area addresses immediately prior to the return of the indictment. After he received DeVorre's request, Ruzzamenti revisited four addresses in search of the defendant. In November 1981, Dale Anderson, a DEA agent assigned to Chicago, visited both Brock's father and mother at their separate addresses and maintained surveillance of his mother's residence on two occasions for about seven hours.

In July 1982, Michael Heard, a FBI agent assigned to find Eric Young, Brock's indicted co-conspirator, searched for Brock as a way of locating Young. He visited Brock's mother's residence on three or four occasions and interviewed a former associate of Brock and Young. When Heard arrested Young in September 1982, he questioned Young about Brock's whereabouts without success.

In June 1983, DEA agent Anderson in Chicago received an unrelated request from the DEA's Grand Rapids, Michigan, office for the telephone records for an unpublished Chicago number. Anderson discovered that the number was registered to one "Holly Brook" and astutely concluded that "Brook" was actually Holly Brock. This was the DEA's first indication that Brock had assumed the alias "Brook." Anderson visited the building where the telephone number was located and spoke with the landlord there. He also determined that one of the cars parked in front of the building was registered to one DeTayna Brock. Nevertheless, the DEA did not find Brock before he was arrested by Chicago police on unrelated charges in July 1983.

As the district court concluded, the reason that the DEA did not locate Brock was because he intended to evade arrest.[5] Some time after his 1977 arrest at O'Hare,

Brock adopted as an alias the false name "Holly Brook." However similar "Brock" and "Brook" might sound, the names are as different as "Adams" and "Zywicki" as far as today's computers are concerned. Brock obtained an Illinois driver's license in the name of "Brook."[6] He applied for a lease using the false name and a fictitious social security number. He arranged for telephone service with an unpublished number using his pseudonym. He also registered title to his automobile in the name of his ten-year-old daughter, DeTayna Brock.

When Chicago police arrested him on June 10, 1983, in another incident involving possession of 15 grams of cocaine, he gave his name and was released on bond as "Holly Brook."[7] It was only after the Chicago police processed his fingerprints that they discovered that "Brook" had an outstanding federal warrant against him in his true name. Brock was arrested again by the Chicago police on July 16, 1983 for an unrelated traffic violation. He again gave his name as "Brook;" however, by this time the Chicago police were aware of his true identity and transferred him to federal custody on July 19, 1983. Thus, the delay between Brock's indictment and his transfer to federal custody was due to his attempt to avoid arrest.

### 2. Delay from Arrest to Guilty Plea

Brock was placed in federal custody on July 19, 1983 and he entered a conditional guilty plea on March 29, 1984; however, Brock and his defense counsel are entirely responsible for any unnecessary delay during these eight and one-third months.

Brock's arraignment was held on July 28, 1983. At that hearing, the federal defender, who had represented Brock when he

---

5. There existed some confusion between the DEA and the FBI concerning which agency had primary responsibility to arrest Brock. Notwithstanding this mistake, we believe that the government searched for Brock with due diligence.

6. Brock also used a Wisconsin driver's license while he was residing in California, although he

had never lived in Wisconsin, and used a California driver's license while he was living in Illinois.

7. When Brock failed to appear at the scheduled state court appearance arising from his June 10, 1983, arrest, a bond forfeiture warrant was issued for his arrest.

was released on bond, withdrew and James Crouch filed an appearance. The government immediately thereafter informed Crouch that it believed that because he had testified before the grand jury in this matter and could be called as a trial witness, Crouch could not represent Brock. On August 29, 1983, one month later, Crouch moved to withdraw as defense counsel. Due to Brock's absence from several hearings and his tardiness in retaining other counsel, the district court did not grant Crouch's motion to withdraw until November 3, 1983, over three months after Brock's arraignment.

The district court granted Brock's newly-retained counsel until December 7, 1983, to file pre-trial motions. Counsel filed his Motion for Indictment Dismissal eight days late on December 15, 1983 and explained that the delay was due to Brock's failure to timely provide him with the necessary documents. The government responded to Brock's motion within 19 days, which included the Christmas and New Year's holidays. On the next four dates scheduled for a hearing on defendant's motion, either Brock was absent or his counsel was engaged in another trial, so that the hearing was not completed until February 13, 1984. On March 13, 1984, one month later, the court denied Brock's motion. Later that month, on March 29, 1984, Brock entered a conditional plea of guilty to the conspiracy count.

Thus, any unnecessary delay between Brock's arrest on federal charges and his guilty plea was due to his tardiness in retaining defense counsel and his and his counsel's frequent absences from scheduled hearings.

## C. Defendant's Assertion of his Rights

In considering the third *Barker* factor, we note that Brock filed his Motion for Indictment Dismissal based upon pre-indictment delay on December 15, 1983.

## D. Prejudice Due to Delay

With regard to the prejudice to defendant's defense caused by delay, the Supreme Court has declared:

Prejudice, of course, should be asserted in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

*Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193. Brock was released on bond on July 20, 1983, after only one night in federal custody. Moreover, Brock testified at a hearing on his Motion for Indictment Dismissal that he was totally unaware of his indictment on conspiracy and possession charges until his arrest on July 19, 1983. Thus, he suffered neither oppressive pretrial incarceration, nor anxiety caused by the pending indictment. As was discussed above with reference to the fifth amendment right of due process, Brock failed even to allege any specific prejudice to his defense. His suggestion that his memory might have faded is insufficient to establish that delay impaired his defense.

■ Weighing the four *Barker* factors, we find that, although Brock asserted his right to a speedy trial in December 1983, the post-indictment delay is due to his attempt to avoid arrest, his tardiness in retaining counsel, and his and his counsel's frequent absences from scheduled hearings. Moreover, the delay did not require prolonged pretrial incarceration, provoke anxiety or prejudice his defense. We therefore conclude that post-indictment delay did not violate Brock's sixth amendment right to a speedy trial.

## IV

Brock argues additionally that he was not brought to trial within 70 days "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs," in violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). The government

contends that Brock waived this issue by not raising it in his Motion for Indictment Dismissal, which primarily addresses pre-indictment, rather than post-indictment, delay. *See United States v. Samples*, 713 F.2d 298, 302 (7th Cir.1983) (waiver of Speedy Trial Act claim). Nevertheless, defense counsel, however inarticulately, did mention in passing the Speedy Trial Act. We, therefore, will liberally construe the motion to dismiss the indictment in this particular case to save Brock from apparent waiver. *See Breuer Electric Manufacturing Co. v. Toronado Systems*, 687 F.2d 182, 186–87 (7th Cir.1983) ("generous" construction of motion to avoid apparent waiver).

 ·We note initially that the period from the indictment on October 14, 1981, to the arraignment on July 28, 1983, is excludable for two reasons. First, section 3161(c)(1) provides that when the indictment precedes the arraignment, the time period for the purpose of the Speedy Trial Act starts to run on the date of the arraignment. *See United States v. Snyder*, 707 F.2d 139, 142 (5th Cir.1983). Second, section 3161(h)(3)(A) excludes "[a]ny period of delay resulting from the absence ... of the defendant." According to section 3161(h)(3)(B), a defendant "shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence." As was discussed above, Brock's whereabouts were unknown, he was attempting to avoid arrest, and the government searched for him with due diligence, but without success. Thus, the time period under the Speedy Trial Act began at Brock's arraignment on July 28, 1983.

Brock concedes that the period from September 15, 1983, to March 13, 1984, is excludable pursuant to section 3161(h)(8), which provides that the court can exclude any period of delay caused by a continuance when the ends of justice are served thereby. He contends, however, that the periods from July 19, 1983, when he was transferred to federal custody, to September 14, 1983, when the court first granted continuances that were excludable under section 3161(h)(8), and from March 13, 1984, when the court denied his Motion for Indictment Dismissal, until March 29, 1984, when he entered a conditional guilty plea, are not excludable. Brock observes that these two periods exceed 70 days, within which section 3161(c)(1) requires that he be tried.

We disagree. The 70-day period did not begin until Brock's arraignment on July 28, 1983. *See Snyder*, 707 F.2d at 142. Moreover, Brock's defense counsel filed a motion to withdraw on August 29, 1983. The motion was not granted until November 3, 1983. Section 3161(h)(1)(F) excludes "delay resulting from any pretrial motion from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Thus, 30 days of the period during which the motion to withdraw was pending are excludable under section 3161(h)(1)(F). *See United States v. Tibboel*, 753 F.2d 608, 611 (7th Cir.1985) (section 3161(h)(1)(J)'s 30-day limit implicitly applies to section 3161(h)(1)(F)). Therefore, the period from August 29, 1983, to September 28, 1983, is excludable pursuant to section 3161(h)(1)(F), whereas the slightly overlapping period from September 15, 1983, to March 13, 1984, is excludable under the "ends of justice" provision of section 3161(h)(8). Thus, the maximum time to be counted for the purpose of the Speedy Trial Act runs from the arraignment on July 28, 1983, until the motion to withdraw on August 29, 1983, and from the denial of the motion to dismiss the indictment on March 13, 1984, until the guilty plea on March 29, 1984, for a total of 48 days. We therefore conclude that Brock entered his conditional guilty plea within the time required by the Speedy Trial Act.

V

For the foregoing reasons, the denial of defendant's motion to dismiss and his conviction are

AFFIRMED.