UNITED STATES of America

v.

Steve R. DACRI.

No. 92–CR–67.

United States District Court,
E.D. Wisconsin.

July 1, 1993.

---

John E. Fryatt, U.S. Atty. by Mel S. Johnson, Asst. U.S. Atty., Milwaukee, WI, for plaintiff.

Gimbel, Reilly, Guerin & Brown by Franklyn M. Gimbel, Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

On March 23, 1993, a grand jury returned a nine-count indictment against the defendant, Steve R. Dacri, charging him with eight counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of wire fraud in violation of 18 U.S.C. § 1343. The charged offenses in the indictment all relate to an alleged scheme on the part of Mr. Dacri to obtain investors for a film production entitled "The Milwaukee Kid." In addition, Mr. Dacri allegedly made false representations that various well-known actors and sports personalities had agreed to work on the film, (Indictment, Count One ¶¶ 3 & 6), and that a director was under contract to direct the film. (Indictment, Count One ¶ 7.)

Mr. Dacri filed motions to dismiss the indictment for pre-indictment delay and for insufficient allegations of mail and wire fraud. In addition, Mr. Dacri filed a motion seeking issuance of a discovery order.

On June 11, 1993, Magistrate Judge Robert L. Bittner recommended that the district court deny each of the defendant's motions. Under 28 U.S.C. § 636(b)(1), a party may file written objections to the magistrate judge's recommendation within ten days after being served with a copy of the recommendation. A district court is obliged to undertake a de novo determination as to those portions of the recommendation to which an objection is made. 28 U.S.C. § 636(b)(1). Where no objection is made, the court should adopt the

magistrate judge's findings and recommendation if they are not clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1).

Mr. Dacri has timely filed an objection to the magistrate judge's recommendation. Mr. Dacri has not objected to the portion of the magistrate judge's recommendation summarily denying his motion for a discovery order; hence, the court should adopt the applicable findings and recommendation of the magistrate judge if they are not clearly erroneous or contrary to law. However, Mr. Dacri has objected to the portions of the magistrate judge's recommendation which deny his motion for dismissal for pre-indictment delay and motion for dismissal for insufficient allegations of mail and wire fraud in the indictment.

With respect to the motion to dismiss for pre-indictment delay, Mr. Dacri challenges the magistrate judge's finding that he failed to show actual and substantial prejudice due to the delay. Mr. Dacri also disagrees with the magistrate judge's characterization of his motion as being based on the "mere passage of time" and with the magistrate judge's finding that the defendant had failed to identify "lost" witnesses.

The objection to the magistrate judge's recommendation denying the motion to dismiss for insufficient indictment consists of a general statement asking the court, "for the reasons stated in [the defendant's] previously submitted briefs," to "reject the magistrate judge's recommendation denying the motion to dismiss . . . ." (Objection of Def., June 15, 1993, p. 2.)

Since Mr. Dacri has raised objections to the magistrate judge's findings and recommendation with regard to the motion to dismiss for pre-indictment delay and with regard to the motion to dismiss for insufficient indictment, the court will make a de novo determination as to those objections.

### I. Motion to Dismiss for Pre-Indictment Delay

In his motion to dismiss for pre-indictment delay, Mr. Dacri contends that he has been prejudiced by the five-year delay between the date of the alleged offense and the March 23, 1993, return of the indictment. In particular, he argues that he has been prejudiced by the delay in three ways: (1) he is precluded from demonstrating the existence of contracts and commitments made by certain actors, sports personalities and film production personnel because, as is common in the industry, certain of the contracts were not reduced to writing and memories have faded; (2) he is prevented from reconstructing his efforts to coordinate the project through contacting persons identified in the indictment or their representatives; and (3) he has been deprived of witnesses who would have assisted him in his defense.

While statutes of limitation provide the primary safeguard against prosecutorial delay, "the due process clause plays a limited role in protecting against oppressive prosecutorial delays." *United States v. Anagnostou,* 974 F.2d 939, 941 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1943, 123 L.Ed.2d 649 (1993). As noted by the magistrate judge, the limited role of the due process clause in this area is demonstrated by the fact that in the 25 odd cases that the court of appeals for the seventh circuit has heard raising the claim, it has never found a pre-indictment delay which rose to the level of a constitutional violation. Magistrate Judge's Recommendation, at p. 3, citing *Anagnostou,* 974 F.2d at 941.

A pre-indictment delay will amount to a due process violation only if "(1) the delay caused 'actual and substantial prejudice' to the defendant's right to a fair trial; and (2) the government delayed the indictment for tactical advantage or some other impermissible reason." *Anagnostou,* 974 F.2d at 941 (citing *United States v. Ashford,* 924 F.2d 1416, 1419–20 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991).

The court of appeals for the seventh circuit has employed two separate standards for establishing a due process violation. Under one line of cases, the defendant is required to prove the existence of both of the factors identified above—actual and substantial prejudice and that the delay was motivated by bad faith on the part of the government. *Pharm v. Hatcher,* 984 F.2d 783, 786 (7th

Cir.1993) (citing *Anagnostou,* 974 F.2d at 941). Under a second line of cases, after the defendant shows actual and substantial prejudice, the burden shifts to the government to show that the delay was necessary. *Pharm,* 984 F.2d at 786, (citing *United States v. King,* 593 F.2d 269, 272 (7th Cir.1979). If the government meets its burden, the prejudice from the delay is balanced with the reasons for the delay. *Pharm,* 984 F.2d at 786–787. The presence of the two standards is not significant in my determination, however, because I agree with the magistrate judge's finding that Mr. Dacri has failed to show actual and substantial prejudice.

 Allegations of prejudice must be specific, concrete, and supported by evidence; vague, speculative or conclusory allegations will not suffice. *United States v. Fuesting,* 845 F.2d 664, 669 (7th Cir.1988). Mr. Dacri argues that the delay has precluded him from demonstrating the existence of contracts and commitments due to the nature of the entertainment industry, the passage of time and faded memories. Mr. Dacri's assertion that the passage of time and faded memories have impaired his ability to demonstrate the existence of contracts and commitments is unsupported by any factual recitations. Nor does Mr. Dacri provide any evidence that would tend to establish that he would have been able to demonstrate the existence of contracts and commitments had there been no delay. Unsubstantiated assertions that one's memory may have faded are insufficient to establish actual and substantial prejudice. *United States v. Brock,* 782 F.2d 1442, 1444 (7th Cir.1986).

Mr. Dacri urges that he was prejudiced by the memory loss caused by the pre-indictment delay because it is the custom of the entertainment industry not to have written contracts and not to document deals until their conclusion. This contention has little cogency; the absence of written contracts or any documentation is not chargeable to the prosecution. The passage of time admittedly dulls one's memory, but by itself it does not translate into prejudice to an accused. With respect to demonstrating the existence of contracts and commitments, it is the nature of the entertainment industry itself that complicates matters for the defendant, not the unsubstantiated allegations of memory loss caused by the pre-indictment delay.

The defendant contends that as a result of the delay, he is precluded from reconstructing his efforts to coordinate the project through contacting persons identified in the indictment. That is, the defendant argues that contacting these individuals after such a lengthy delay would be futile because the memories of such individuals undoubtedly have faded. Once again, aside from his general assertion that individuals in the entertainment industry have notoriously "short memories," Mr. Dacri has not substantiated his allegation that the memories of these individuals have indeed deteriorated over time. *Brock,* 782 F.2d at 1444.

Furthermore, with respect to his argument that his ability to reconstruct his efforts has been prejudiced by the delay, the government has convincingly shown that Mr. Dacri was apprised of the concerns of the investors and their allegations of wrongful conduct as early as 1989. (Response of the United States to Pre–Trial Motions by the Defendant, Exs. A and B.) While it is true that such correspondence may not have specifically alerted Mr. Dacri to the ensuing criminal investigation, the alarms and accusations of the investors at least should have created the *opportunity* for Mr. Dacri to take some steps to "reconstruct" his defenses up to that point in time.

Later in 1989, a second opportunity to reconstruct his efforts arose when Mr. Dacri was served with a subpoena requiring him to produce a variety of documents in connection with the production of "The Milwaukee Kid." The defendant argues (with only modest cogency) that the delay between the issuance of the subpoena and the returning of the indictment, without more, "lulled" him into believing that the government had not decided to prosecute him and that he need not gather information to defend himself.

 Mr. Dacri also maintains that he has been deprived of the testimony of witnesses because of the government's lengthy delay. Contrary to the finding of the magistrate judge, I find that Mr. Dacri has indeed

identified these witnesses to the extent that he refers to them as the individuals designated in the indictment. Lost witness cases require proof that the witness would have testified and withstood cross-examination and that the jury would have found the witness credible. *Pharm*, 984 F.2d at 786 (citing *United States v. Doerr*, 886 F.2d 944, 964 (7th Cir.1989). However, the court must nevertheless agree with the finding of the magistrate judge that Mr. Dacri's lost witness claim is speculative and not supported with the requisite proof.

Counsel for the defendant, Franklyn Gimbel, alludes to the dilemma faced by defendants such as Mr. Dacri: "they cannot establish prejudice under the law without proving that helpful evidence existed but for the delay, however, they cannot prove the existence of such evidence *because* of the delay." (Objection of Def., June 15, 1993, pp. 1–2.) The flaw in that reasoning is that it is the defendant who must prove "actual and substantial prejudice" resulting from the delay. His "dilemma" does not relieve Mr. Dacri of this burden.

The feeble reasons advanced by the prosecution for the lengthy delay are both bureaucratic and "distressing," *Anagnostou*, 974 F.2d at 943. However, they do not equate with bad faith on the part of the government rising to the extreme of a constitutional violation. Whatever the court of appeals meant when it said such delays will not be "condoned," *Anagnostou*, 974 F.2d at 943, it clearly did not mean that a lengthy delay would warrant dismissal, absent proof of bad faith.

For all of the foregoing reasons, the court will adopt the findings of the magistrate judge, as modified herein, and adopt the recommendation of the magistrate judge with respect to the defendant's motion to dismiss for pre-indictment delay. Thus, the defendant's motion to dismiss for pre-indictment delay will be denied.

## II. Motion to Dismiss for Insufficient Indictment

■ In his motion, Mr. Dacri argues that even if the factual allegations in the indictment are true, they fail to establish mail or wire fraud violations. In particular, he asserts that counts one through seven of the indictment should be dismissed because the allegations of the mailing of checks and the wire transfer of funds from alleged victims contained therein were not "in furtherance of the scheme" and, therefore, could not constitute the basis for those charges.

"An indictment is constitutionally sufficient if it states all of the elements of the offense charged, informs the defendant of the nature of the charges so that he can prepare a defense, and enables the defendant to assess any double jeopardy problems the charge may raise." *United States v. Stout*, 965 F.2d 340, 344 (7th Cir.1992) (citing *United States v. Sloan*, 939 F.2d 499, 501 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992)). Because the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343 respectively, share virtually the same language, the same analysis is applied to both sets of offenses. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987); *Lombardo v. United States*, 865 F.2d 155, 157 (7th Cir.), *cert. denied* 491 U.S. 905, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989).

The essential elements of mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 are: (1) a scheme to defraud, and (2) use of the mail or wire communications in furtherance of the scheme. *Stout*, 965 F.2d at 344 (mail fraud); *Lombardo*, 865 F.2d at 157 (wire fraud). It is not necessary to demonstrate that the defendant actually mailed anything or utilized a wire communication himself; it is sufficient if he caused it to be done. *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954). Moreover, it is not necessary that the scheme contemplate the use of the mails or wire communication as an essential element; proof that the mailing or wire communication is incident to an essential part of the scheme is adequate. *Pereira*, 347 U.S. at 8, 74 S.Ct. at 362.

Counts one through five and count seven allege that the defendant committed mail fraud by knowingly causing specific mailings to be made to him by individual victims—

investors—of the fraudulent scheme. Count six, which charges wire fraud, alleges that the defendant knowingly caused an interstate wire transfer of funds from a bank account in Milwaukee to a bank account in California. According to the defendant's brief, the wire transfers or mailings referred to in counts one through seven were made by an investor. The government does not dispute this representation.

Nevertheless, the defendant maintains that count one through count seven are constitutionally deficient because the transfers of funds via mailings and wire transmissions identified therein were the products of the scheme to defraud but did not further the scheme to defraud. In other words, Mr. Dacri argues that by the time the investors had transferred funds to him the alleged scheme to defraud the investors had already "reached fruition." His argument is without merit.

The court of appeals for the seventh circuit has recognized that where, as here, the object of a scheme to defraud is to obtain funds, the mailing (and hence, the wire transfer) by victims of checks representing those funds are in furtherance of the scheme to defraud. *United States v. Cavale,* 688 F.2d 1098, 1112 (7th Cir.1982), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 380, 74 L.Ed.2d 513 (1983) (holding that mailing of the checks by the victim—the city of Chicago—to the defendant was the final and essential step in the fraudulent enterprise and thus, within the scope of the mail fraud statute).

Because the receipt of the funds from the alleged victims was the last step and ultimate goal of the alleged fraudulent scheme, the mailings referred to in count one through count seven are within the contemplation of the mail and wire fraud statutes. Accordingly, I agree with the finding of the magistrate judge that the allegations in counts one through seven of the indictment are constitutionally sufficient.

Mr. Dacri also maintains that the mailings underlying counts eight and nine—mailing of a progress report and project profile to an "investor" and mailing of a letter in response to an investor's request for an accounting—are not within the scope of the mail fraud statute insofar as they were made after funds had been obtained from the alleged victims and thus, could not have been in furtherance of the scheme to defraud.

The government acknowledges that the mailings underlying counts eight and nine were each made after the victims' funds had been obtained. However, it challenges Mr. Dacri's argument that such mailings were not in furtherance of the scheme because completion of the fraudulent scheme did not depend upon the mailings. The government contends that these mailings furthered the fraudulent scheme by lulling the victims into a false sense of security which minimized the ability of the victims to detect the fraud and recover their money.

While it is true that not all mailings made after the defendant has reaped the fruits of his fraudulent scheme further the scheme, those mailings which are designed to lull the victims into a false sense of security or postpone their ultimate complaint to the authorities can be said to further the fraudulent scheme. *United States v. Lane,* 474 U.S. 438, 451–52, 106 S.Ct. 725, 733–34, 88 L.Ed.2d 814 (1986), *United States v. O'Connor,* 874 F.2d 483, 486 (7th Cir.1989).

Mr. Dacri also contends that the mailings at issue could not be said to have "lulled" the investors into a false sense of security because, as it turns out, the mailings provided the investors with information which made the alleged victims even more suspicious of Dacri's actions. However, this argument is unpersuasive in light of the conclusion by the United States Supreme Court that a mailing may be part of the execution of the scheme even if hindsight indicates that the mailing may have been "counterproductive." *Schmuck v. United States,* 489 U.S. 705, 715, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989).

Moreover, this is not a case where the alleged mailing occurred after the time at which the indictment alleged the fraudulent scheme had ended. *Cf. United States v. Cina,* 699 F.2d 853, 861 (7th Cir.1983), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). Here, the indictment alleges that the scheme lasted through July 31, 1989, while the mailings underlying

**556**

counts eight and nine occurred on June 25, 1988, and July 14, 1989, respectively.

Thus, to the extent that the mailings underlying counts eight and nine were intended to lull the victims into a false sense of security, such mailings are within the scope of the mail fraud statute. Accordingly, I agree with the magistrate judge's finding that the allegations in counts eight and nine are constitutionally sufficient; the court will adopt the findings of the magistrate judge and his recommendation to deny the motion to dismiss the indictment for insufficient allegations of mail and wire fraud.

### III. Motion for a Discovery Order

Along with the two motions to dismiss, Mr. Dacri filed a motion for a discovery order pursuant to Rule 16, Federal Rules of Criminal Procedure. Such motion was purportedly filed "to preserve the defendant's rights should discovery disputes arise in the future." (Defendant's Motion for Discovery Order.) The magistrate judge found that the submissions of the parties did not reveal that a discovery dispute existed. Thus, the magistrate judge recommended that the motion be summarily denied.

Having reviewed the submissions of the parties and the controlling law, I hold that this finding and this recommendation are not clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1). Hence, the court will adopt the magistrate judge's recommendation to deny the motion for a discovery order pursuant to Rule 16, Federal Rules of Criminal Procedure.

### ORDER

Therefore, IT IS ORDERED that the magistrate judge's findings, as modified herein, and his recommendation, be and hereby are adopted as the decision and order of this court.

IT IS ALSO ORDERED that the defendant's motion to dismiss for pre-indictment delay be and hereby is denied.

IT IS FURTHER ORDERED that the defendant's motion to dismiss the indictment for insufficient allegations of mail and wire fraud be and hereby is denied.

IT IS FURTHER ORDERED that the motion for a discovery order be and hereby is denied.