NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 29, 2007
Decided January 23, 2008

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 07-1796

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee,* <br><br>      *v.* <br><br> MANUEL J. GASTELUM, <br> also known as GEORGE RODRIGUEZ, <br>     *Defendant-Appellant.* | Appeal from the United States <br> District Court for the Northern District <br> of Illinois, Eastern Division. <br><br> No. 05 CR 662 <br><br> Ruben Castillo, *Judge.* |

**O R D E R**

On November 8, 2006, a jury found Manuel DeJesus Gastelum guilty of money laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2. The district judge (Ruben Castillo) sentenced Gastelum to a term of 78 months in prison. Gastelum challenges his conviction on four grounds: (1) his rights under the Speedy Trial Act, 18 U.S.C. § 3161, were violated, since he was not brought to trial within 70 days; (2) the government's evidence was insufficient to establish that the drug proceeds found in his car were destined for Mexico; and (3) he was denied a fair trial as a result of a statement made by the prosecutor in her closing argument.

On July 21, 2005, Officer Kim Hanson of the Aurora, Illinois, police department clocked a Chevy Malibu traveling on Lake Street at 51 mph in a 35-mph zone. Hanson pulled the car over. Officer William Rowley and his partner, John Munn, witnessed the event and stopped to assist Hanson.

Gastelum, the driver, presented Hanson with a Mexican license. Because Hanson was unable to communicate with Gastelum, who didn't speak English, Hanson sought the help of Rowley, who, while not fluent, could ask basic questions of Gastelum in Spanish.

In response to Rowley's questions, Gastelum indicated that he had been in the United States for one or two years and currently lived in Melrose Park, Illinois. Based on these answers, the officers concluded that Gastelum was an Illinois resident, not a nonresident permitted to legally drive with only a foreign license. As a result, the officers arrested Gastelum for driving without a valid Illinois driver's license.

Before towing and impounding Gastelum's vehicle, Officer Munn conducted an inventory search of the car. In the trunk, Munn found two duffle bags containing bundles wrapped in plastic and sealed with duct tape. He initially thought the bundles were bricks of cocaine but, after further inspection, saw that the packages contained money–a whopping $889,385 in cash!

The officers transported Gastelum to the Aurora police department, read him his Miranda rights, and gave him an advice-of-rights form printed in Spanish. The form was read to Gastelum. Although Gastelum refused to sign the waiver-of-rights section of the form, he told the officers that he understood his rights and was willing to speak with them.

Two Spanish-speaking Aurora police officers, Gerald Marrero and Alfredo Dean, questioned Gastelum. In response to their questions, Gastelum told the officers that he was a Mexican citizen. About one week earlier, he explained, he entered the United States illegally at the San Ysidro, California, border crossing using the alias of "George Rodriguez." He then flew to Chicago using another alias (which he said he couldn't remember).

At first, Gastelum told the officers he was on vacation and was staying at a hotel near the Indiana border. Later, he changed his story, claiming that he was staying with friends. Gastelum was unable, though, to remember his buddies' names and addresses.

Gastelum explained that he was transporting the bags to a liquor store in Aurora as a favor for someone in Mexico.  This person, whom Gastelum refused to identify, had called him and instructed him to purchase a new cell phone.  Gastelum did so and two days later received another call from the mystery man.  The man instructed Gastelum to meet two additional contacts at a mall in Cicero, Illinois.  At a residential side street near the mall, these men placed the two duffle bags in the trunk of Gastelum's car.

Gastelum insisted that the bags--which he knew were stuffed with approximately $1 million in U.S. currency--didn't belong to him.  He told the officers, in essence, that "[he] kn[ew] that [the officers] kn[ew] the money c[ame] from drugs."  Gastelum wanted to "leave it at that."  He signed a form waiving any claim to the money.

Gastelum told the officers that the money was headed to a city near the U.S.-Mexico border.  He claimed, though, that he didn't know the money's precise destination, since he was dropping it off at the Aurora liquor store.

At the end of the interview, Gastelum was taken into federal custody, and, the next morning (July 22, 2005), was formally charged by complaint with traveling in interstate commerce in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1952(a)(1).  Gastelum made his initial appearance later that day.

On October 6, 2005, Gastelum was charged by indictment with money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2.  Specifically, he was charged with attempting to transport the $889,385 from Aurora, Illinois, to Mexico in support of a narcotics operation.  Gastelum was arraigned on the money laundering charge on October 26, 2005--20 days after the return of the indictment.

On September 26, 2006, Gastelum filed a motion to dismiss the indictment with prejudice on the ground that his trial violated the Speedy Trial Act.  Basing his calculations on the assumption that the speedy trial clock had begun to run on the date he was indicted, Gastelum argued that 72 days of nonexcludable time under the Act had expired.

The district court denied Gastelum's motion to dismiss on October 11, 2006, after concluding that no violation of the Speedy Trial Act had occurred.

Gastelum's trial began on November 6, 2006.  During her closing argument, the prosecutor emphasized that there was no evidence that Gastelum had traveled

to the United States for a lawful purpose.  Gastelum objected to this remark, but the district court overruled the objection.

The prosecutor continued her closing argument, stating:

> We have no evidence that he was here on vacation.  And [Gastelum's attorney] is right.  The defendant is presumed innocent at the beginning of the trial.  He has no requirement that he testify.  If he doesn't testify, you can't hold that against him.  He does not have to put on a case at all, but he could call a witness if he wanted to.

At this point, Gastelum objected again, and the court sustained the objection.  The court instructed the jury that "the defendant absolutely has no burden, is not obligated to call any witnesses."  In his final instructions, the district judge reminded the jury that the government had the burden of proving Gastelum's guilt beyond a reasonable doubt and that "[t]he defendant is never required to prove his innocence or to produce any evidence at all."

The jury returned a guilty verdict, and on March 29, 2007, Gastelum was sentenced to a term of 78 months in prison.

Our first task is to determine whether the district court properly denied Gastelum's motion to dismiss the indictment as a result of a purported violation of his rights under the Speedy Trial Act.  Because the calculation of time is at issue, our review of the district court's denial of Gastelum's motion is de novo.  Id.

The purpose of the Speedy Trial Act is to implement a defendant's Sixth Amendment right to a speedy trial.  United States v. Janik, 723 F.2d 537, 542 (7th Cir. 1983).  Under § 3161(c)(1) of the Act, the trial of a defendant must begin within 70 days.[1]  In determining whether the 70-day limit was reached, we must determine when the speedy trial clock started running, when it stopped running, and what parts of the elapsed time are excludable.  United States v. Baskin-Bey, 45 F.3d 200, 203 (7th Cir. 1995).

---

[1]  "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).

The parties agree the speedy trial clock stopped on the day Gastelum's trial began: November 6, 2006. They dispute, however, when the clock started ticking. As we just noted, Gastelum argues that when he moved on September 26, 2006, to dismiss the indictment, 72 days of nonexcludable time had expired.[2] The government disagrees, noting that Gastelum incorrectly assumes that the 70-day period began to run on October 6, 2005, the date he was indicted.

The government has the better of the argument. Under § 3161(c)(1), the speedy trial clock begins to run from the later of two events: the date of indictment or the date the defendant appeared before a judicial officer on that charge. When Gastelum was arraigned, he "appeared before a judicial officer of the court in which such charge is pending" within the meaning of the Speedy Trial Act. Since Gastelum's arraignment was held 20 days after his indictment, the clock started ticking on the date of his arraignment--October 26, 2005. See, e.g., United States v. Brock, 782 F.2d 1442, 1448 (7th Cir. 1986). Thus, Gastelum mistakenly added the time between his indictment and arraignment--20 days--to his tally of expired days.

Gastelum's calculations require even more tweaking, however. The government also correctly points out that Gastelum erroneously included a second 20-day period--February 15, 2006, to March 7, 2006--in his tally. The district court gave the parties this time to prepare their pretrial motions. We agree that these 20 days should have been deducted from the running total, since time expressly granted by the district judge for preparation of pretrial motions must be excluded. See United States v. Montoya, 827 F.2d 143, 153 (7th Cir. 1987).

Since Gastelum mistakenly included these two 20-day periods in his running total of 72 expired speedy trial days, we need not consider his remaining argument that the district court erred in retroactively excluding the period between April 25, 2006, and May 23, 2006.[3] Even if Gastelum is correct, and this 28-day period should have been included, it is clear that he was brought to trial within 70 days. Thus, we agree with the district court that no Speedy Trial Act violation occurred.

---

[2] Of course much more actual time had run, but all sides agree many days (time to make and resolve a suppression motion, for example) were excludable.

[3] Gastelum, furthermore, provides no support for his argument that the district court lacked the authority to exclude speedy trial time on a retroactive basis. For this additional reason, we need not consider his claim. See, e.g., United States v. Mason, 974 F.2d 897, 901 (7th Cir. 1992).

We must next consider the sufficiency of the evidence supporting Gastelum's money laundering conviction. At trial, the government sought to establish that Gastelum helped transport the nearly $900,000 found in his Chevy from a location in the United States to a location outside of the United States (namely, Mexico). Gastelum claims that the government presented insufficient evidence that the money found in his trunk was headed south of the border.

In raising a challenge to the sufficiency of the evidence, Gastelum faces a nearly insurmountable hurdle. United States v. Moore, 115 F.3d 1348, 1363 (7th Cir. 1997). In evaluating his argument, we consider the evidence in the light most favorable to the government, defer to the jury's credibility findings, and overturn the verdict only if the record contains no evidence from which the jury could conclude that Gastelum was guilty beyond a reasonable doubt.

At trial, government witnesses recounted Gastelum's damaging admissions. Gastelum acknowledged that, using an alias, he entered the United States illegally from Mexico about one week before his arrest, that the bundles found in his trunk were drug proceeds he was transporting at the direction of someone in Mexico, and that this money was headed to a U.S. city near the U.S.-Mexico border.

The government solidified its case with evidence that Gastelum was a Mexican citizen and resident who had recently traveled to and from the United States; possessed three cell phones, one of which he acquired in Chicago; and, while in Chicago, communicated repeatedly with individuals with Mexican telephone numbers. In addition, Gastelum had sought to operate covertly: all three of his phones were registered under fictitious names and addresses; he registered his car, which he purchased in cash, using a fictitious address; and, when he was arrested, he gave the officers a false home address.

Finally, expert witness testimony about the structure and operation of Mexican drug organizations suggested that Gastelum's chosen methods of transportation, communication, and identification were consistent with those of a Mexican drug ring "facilitator" who was smuggling drug money in bulk.

Viewing this evidence in the light most favorable to the government, we conclude that a jury could have reasonably inferred that the nearly $900,000 found in Gastelum's car was, in fact, headed for Mexico. Any other conclusion by this jury would have been surprising. Gastelum's money laundering conviction is supported by more than sufficient evidence.

In his final argument, Gastelum claims that the district court erred in denying his motion for a mistrial based on the statements made by the prosecutor during the government's closing argument. Specifically, Gastelum argues that the prosecutor engaged in misconduct by telling the jury that he could have called a witness to testify in his defense.

We review the district court's refusal to grant a new trial for an abuse of discretion. United States v. Glover, 479 F.3d 511, 520 (7th Cir. 2007).

To determine whether the district court should have granted a mistrial, we engage in a two-part analysis: we ask (1) whether the prosecutor's arguments, viewed in isolation, were improper; and (2) whether in light of the record, these comments deprived Gastelum of a fair trial. Glover, 479 F.3d at 520. To assess the fairness of Gastelum's trial, we consider four additional factors: (1) the nature and seriousness of the prosecutorial misconduct; (2) whether defense counsel invited the prosecutor's remarks; (3) the adequacy of the trial court's instructions to the jury; (4) whether the defense was able to counter the improper arguments through rebuttal; and (5) the weight of the evidence against the defendant. Glover, 479 F.3d at 521.

Although the government correctly concedes that the statement at closing argument was improper, it is clear that the error was no more than harmless.

Gastelum shares no blame for the prosecutor's remark: he never "invited" the statement. Nonetheless, any harm Gastelum suffered was slight, since the district court remedied the situation immediately. The court promptly sustained Gastelum's objection and gave a curative instruction to the jury, emphasizing that Gastelum had no burden to call any witnesses. In addition, in its final instructions to the jury, the court repeated that Gastelum had no obligation to prove his innocence or introduce any evidence. Instead, the court explained, the burden was on the government to prove the defendant's guilt beyond a reasonable doubt.

Gastelum's attorney, too, had ample opportunities to delineate the respective obligations of the defendant and the government. In his closing argument, the attorney emphasized that a defendant "carries no burden of proving anything." He indicated that the burden of proof lay squarely on the government, which, he argued, "should have called more witnesses if, in fact, [it] had the proof against [Gastelum]." Finally, for good measure, Gastelum's attorney scolded the prosecutor for "mis-sp[eaking]" and "inappropriate[ly]" arguing that the defendant should have put a witness on the stand.

Although it is clear that the district court and Gastelum's attorney deftly minimized any harm Gastelum suffered as a result of the prosecutor's remark, yet another reason remains to affirm the district court's denial of Gastelum's motion: the government's case was very strong.

Through his admissions, Gastelum furnished the bulk of the government's case: he recently entered the United States illegally using an alias, and was caught transporting drug money at the direction of someone in Mexico. Gastelum's cell phone records, coupled with the testimony of several police officers and an expert in money laundering, solidly filled in the remaining gaps. Thus, the district court did not abuse its discretion in denying Gastelum's motion for a mistrial.

For these reasons, the defendant's conviction is AFFIRMED.